Beverly B. FITZGERALD, Appellant,

v.

NORWEST CORPORATION, etc., et al., Respondents.

No. C4–85–1686.

Court of Appeals of Minnesota.

Feb. 25, 1986.

Review Denied April 24, 1986.

Edward Q. Cassidy, Mansur, O'Leary & Gabriel, St. Paul, for appellant.

Donald E. Horton, Jr., Horton & Associates, Minneapolis, for respondents.

Heard, considered and decided by LANSING, P.J. and HUSPENI and LESLIE, JJ.

## OPINION

HUSPENI, Judge.

The trial court granted summary judgment in favor of respondents Norwest Corporation and Norwest Bank Thief River Falls (Bank). On appeal, appellant Beverly Fitzgerald contends that summary judgment was inappropriate because (1) the statute of limitations contained in Minn. Stat. § 363.06, subd. 3 (1982) should run from her date of discharge not from when she received notice of her discharge, and (2) the statements in the Bank's employee handbook regarding its affirmative action policy were definite enough to raise a ques-

tion of fact for a jury. We reverse and remand for trial on the merits.

## FACTS

Fitzgerald was employed by the Bank as a teller. On July 12, 1984, she was notified in writing and verbally that the Bank's operations were being modified and her position was being eliminated effective July 27, 1984.

On January 25, 1985, Fitzgerald filed a summons and complaint alleging that the Bank terminated her employment because of her age in violation of the Minnesota Human Rights Act and that termination was also a breach of her employment agreement with the Bank.

## ISSUES

1. Is appellant's age discrimination claim barred by the limitations period in Minn.Stat. § 363.06, subd. 3?

2. Are the statements in the Bank's employee handbook about its affirmative action policy specific enough to raise a jury question about whether they were part of the employment agreement between the Bank and Fitzgerald?

## ANALYSIS

### I.

### Statute of Limitations

Minn.Stat. § 363.06, subd. 3 (1982) provides that:

A claim of an unfair discriminatory practice must be brought as a civil action * * * within six months after the occurrence of the practice.

Fitzgerald contends that the "occurrence of the practice" in the statute is the date of her discharge, not the date of notice of her discharge.

The trial court found that under *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), the "occurrence" is the notice of discharge and that Fitzgerald had not filed her complaint within six months of that date. To reach this conclusion, the trial court construed the state law, Minn.

Stat. § 363.06, subd. 3, in pari materia with the federal law under Title VII.

In several instances the Minnesota Human Rights Act has been construed using principles developed in Title VII cases "[b]ecause of the substantial similarities in the language and purposes of the two statutes." *Hubbard v. United Press International, Inc.,* 330 N.W.2d 428, 441 (Minn. 1983). Under the particular circumstances of this case, however, the Minnesota Supreme Court has chosen to depart from the principles used in Title VII cases. In *Richardson v. School Board of Independent School District No. 271,* 297 Minn. 91, 210 N.W.2d 911 (1973), the court interpreted the phrase "occurrence of the practice" as contained in section 363.06, subd. 3 to mean:

> a discharge or required resignation, the date of which commences the statutory period of limitations.

*Id.* at 98, 210 N.W.2d at 916. This holding was reiterated in *Buchholz v. Capp Homes, Inc.,* 321 N.W.2d 893 (Minn.1982), where the court considered an age discrimination claim under section 363. Once again the court held:

> the date of the discharge commenced the running of the statutory period of limitations.

*Buchholz,* 321 N.W.2d at 894.

■ We conclude that under *Buchholz* and *Richardson* the statute of limitations for Fitzgerald's age discrimination claim did not begin to run until the date of her discharge. Therefore, her claim under the Minnesota Human Rights Act was not barred by the statute of limitations.

## II.

### Breach of Contract Claim

The Bank's employee handbook states in part:

> First Northwestern State Bank of Thief River Falls reaffirms its commitment to the staff and community that all employment policies and practices are without discrimination as to race, creed, religion, sex, color, age, national origin,

handicapped, or to military veterans. We treat all applicants and employees without discrimination regarding hiring, training, compensation, promotion, transfer, education, opportunities, benefits, layoffs, tuition assistance, social and recreation programs. First Northwestern State Bank has developed an Affirmative Action Program approved by its Board of Directors to ensure that its commitment is more than just a statement but a strong and working program. We encourage all persons to seek employment with the Bank with the knowledge that this program is in effect.

> The administration of the program will be the direct responsibility of the designated Affirmative Action Coordinator. The Coordinator will be responsible for monitoring its efficiency and effectiveness. This individual will ensure that all employment policies and practices are based on our commitment as an Affirmative Action Equal Opportunity Employer.

Fitzgerald claims that the statements in the employee handbook regarding affirmative action became a part of her employment contract. The trial court found that these were only policy statements that the Bank would obey the law and therefore they could not be the basis for a breach of contract claim.

■ Statements in an employee handbook may become enforceable as part of an employment agreement if the requirements for formation of a unilateral contract are met. *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983). The requirements are (1) that there be an offer which is definite in form and communicated to the employee; (2) that the employee accept the offer; and (3) that the employee supply consideration. *Pine River,* 333 N.W.2d at 626–27.

■ The trial court found that the handbook provisions did not constitute an offer. In order to be an offer, the provisions in an employee handbook must be definite in form.

An employer's general statements of policy are no more than that and do not

meet the contractual requirements for an offer.

*Pine River*, 333 N.W.2d at 626. The handbook provision here goes beyond merely stating that the Bank is an equal opportunity employer. The provision expressly indicates it is "more than just a statement." It specifically refers to a strong and working program and encourages persons to seek employment with this knowledge.

■ We believe that the handbook language is definite enough to raise legitimate fact questions about whether the provisions constituted an offer, and whether Fitzgerald's subsequent actions constituted an acceptance such that the provisions became a part of the employment agreement and restricted the Bank's right to terminate her employment. These questions are for a jury to resolve. Therefore, summary judgment on this issue was inappropriate.

### DECISION

Fitzgerald's claim of age discrimination under the Minnesota Human Rights Act was not barred by the statute of limitations in Minn.Stat. § 363.06, subd. 3.

The language in the employee handbook was specific enough to raise a jury question, and therefore summary judgment on Fitzgerald's breach of employment contract claim was inappropriate.

Reversed and remanded.