Margaret **HOLMAN**, Appellant,

v.

**CPT CORPORATION**, Respondent.

No. C7–90–76.

Court of Appeals of Minnesota.

July 3, 1990.

Rehearing Denied Sept. 20, 1990.

Lucinda E. Jesson, Catherine A. Cella, Michael E. Keyes, Oppenheimer, Wolff & Donnelly, Minneapolis, for respondent.

Considered and decided by FOLEY, P.J., and KALITOWSKI and SCHUMACHER, JJ.

## OPINION

FOLEY, Judge.

Upon her discharge from employment by respondent CPT Corporation, appellant Margaret Holman filed this lawsuit, alleging unjust enrichment and failure to pay wages and commissions in violation of common law and Minn.Stat. § 181.13 (1986). The trial court granted CPT's motion for summary judgment, and Holman appealed. We reverse and remand for further proceedings on the merits.

## FACTS

Holman began working as a sales representative for CPT in 1980. Initially, Holman was paid a salary and partial commission, but in 1981, CPT began paying her on a straight commission basis.

At the beginning of fiscal year 1987, CPT decided to change its compensation plan for all sales representatives to a fixed salary with partial commissions. Because her compensation would be reduced as a result of this change, Holman appealed the CPT's decision through the company's grievance procedure. The grievance committee upheld the new compensation plan in September 1986.

Holman had been CPT's sales representative for the Mayo Clinic accounts since 1980. She was an excellent representative, and was responsible for building up the Mayo accounts. A meeting had been scheduled between Holman and Mayo for December 10, 1986, at which time Holman was to provide a final price quote for a large sale of equipment to Mayo.

For at least six months prior to the scheduled December 10 meeting, Holman's relationship with her supervisors had declined. CPT alleged that Holman had filed

Maurice W. O'Brien, Gordon–Miller–O'Brien, Minneapolis, for appellant.

a false expense report, had taken a vacation without informing her supervisor, had failed to use proper signout sheets, and had reacted unprofessionally to a room assignment at a convention.

Holman was terminated from employment with CPT on December 6, 1986—four days before she was scheduled to finalize the Mayo deal. As a result, another CPT sales representative met with Mayo and completed the sale. A representative from Mayo stated in an affidavit that the parties had already "substantially" agreed upon the sale, and that the parties' prior calculations were used when completing the necessary forms for the sale.

Following her discharge, Holman filed the present lawsuit against CPT, alleging wrongful termination, unjust enrichment, fraud, and violation of Minn.Stat. § 181.13. CPT moved for summary judgment, and the trial court granted the motion. Holman has appealed from the judgment entered pursuant to the court's order.

## ISSUES

1. Did the trial court err by concluding CPT did not violate Minn.Stat. § 181.13?

2. Did the trial court err by granting summary judgment on Holman's claim of a common law right to commissions?

3. Do the facts support Holman's claim of retaliatory discharge?

4. Did the trial court err by granting summary judgment on Holman's claim of unjust enrichment?

## ANALYSIS

■ On appeal from a summary judgment, this court's function is to determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). As the court stated in *Sauter v. Sauter*, 244 Minn. 482, 70 N.W.2d 351 (1955):

It is essential to bear in mind that the moving party has the burden of proof and that the nonmoving party has the benefit of that view of the evidence which is most favorable to him. * * * [R]esort to summary judgment was never intended to be used as a substitute for a court trial or for a trial by jury where any genuine issue of material fact exists. In other words a summary judgment is proper where there is no issue to be tried but is wholly erroneous where there is a genuine issue to try.

*Id.* at 484–85, 70 N.W.2d at 353 (footnotes omitted).

■ 1. Holman claims CPT violated Minn.Stat. § 181.13 by failing to pay her the commissions earned as a result of the Mayo sale. Minn.Stat. § 181.13 provides in relevant part:

When any * * * corporation employing labor within this state discharges a servant or employee, the wages or commissions actually earned and unpaid at the time of the discharge shall become immediately due and payable upon demand of the employee.

When determining whether the disputed commissions were "actually earned" by Holman at the time of her discharge, the trial court applied Minn.Stat. § 181.145 (1986):

**Subdivision 1. Definitions.** * * * For the purposes of this section, the phrase "commissions earned through the last day of employment" means commissions due for services or merchandise which have actually been delivered to and accepted by the customer by the final day of the salesperson's employment.

Applying this definition, the trial court concluded that since the Mayo equipment had not actually been ordered, delivered, or accepted on the date of Holman's termination, she had not "actually earned" the commissions for the sale within the meaning of Minn.Stat. § 181.13.

We believe the trial court erred by relying on section 181.145 when interpreting the phrase "actually earned" as used in section 181.13. Section 181.145 is only applicable to situations where section 181.13 is not applicable; i.e., where disputed commissions are owed an independent contrac-

tor, not an employee. *See Anderson v. Medtronic, Inc.,* 382 N.W.2d 512 (Minn. 1986). In *Anderson,* the court stated:

> Section 181.145 is similar to section 181.14, except that it only applies to "commission salespersons." A commission salesperson is "a person who is paid on the basis of commissions for sales and who is not covered by sections 181.13 and 181.14 because he or she is an independent contractor". Minn.Stat. § 181.145, subd. 1 (1984).
>
> \* \* \* \* \* \*
>
> The legal relationship of an employer and an independent contractor differs from that of an employer and a salaried employee. We can perceive no valid reason why the legislature could not legislate different conditions for regulating prompt payment of compensation for the respective members of two different groups.

*Id.* at 516–17. *Cf. Hovelson v. U.S. Swim & Fitness, Inc.,* 450 N.W.2d 137 (Minn.App. 1990), *pet. for rev. denied* (Minn. March 16, 1990); *Dougan v. Niedermaier,* 419 N.W.2d 112 (Minn.App.1988), *pet. for rev. denied* (Minn. April 15, 1988).

Similarly, here, we conclude that the phrase "actually earned" as used in Minn. Stat. § 181.13 differs from the phrase "commissions earned through the last day of employment" as defined in Minn.Stat. § 181.145, since section 181.13 governs employees and section 181.145 governs independent contractors. It was error for the trial court to superimpose the statutory provisions relating to independent contractors upon the statutory provisions relating to employees.

■ Since the term "actually earned" is not defined by statute, the terms of CPT's own compensation plan may be considered in determining whether Holman had earned the Mayo commissions. In the present case, the trial court did not consider whether CPT's employment contract defined the meaning of the phrase "actually earned." In fact, the record does not contain any handbook provisions on the subject. Whether or not Holman had actually earned the Mayo commission at the time of her discharge was a question of fact which the trial court was not free to decide on summary judgment.

2. The trial court concluded that Holman did not have a common law right to the Mayo commissions, since she could not demonstrate bad faith by CPT.

■ Under Minnesota law, an implied covenant of good faith and fair dealing in employment contracts has not been recognized. *Bratton v. Menard, Inc.,* 438 N.W.2d 116, 119 (Minn.App.1989), *pet. for rev. denied* (Minn. June 9, 1989). Rather, employment for an indefinite term is generally terminable at the will of either the employer or the employee. *Cederstrand v. Lutheran Brotherhood,* 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962).

■ The Minnesota courts have held, however, that an employee handbook may create a unilateral contract, requiring good faith termination of employment. *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 626–27 (Minn.1983). For a handbook to form a unilateral contract, the following elements must be met: (1) definite offer; (2) communication to offeree; (3) acceptance; and (4) consideration. *Id.* The handbook must contain specific and definite provisions, and not general statements of policy. *Id.* at 626; *Fitzgerald v. Norwest Corp.,* 382 N.W.2d 290, 292–93 (Minn.App. 1986), *pet. for rev. denied* (Minn. April 24, 1986).

■ CPT's handbook provided:

> Often problems of unsatisfactory performance or unacceptable behavior can be corrected with direction from the employee's supervisor and a sincere effort on the part of the employee. When efforts to improve performance do not succeed, termination of employment may be the only recourse.
>
> Involuntary terminations include discharges due to unsatisfactory performance of assigned duties, insubordination, immoral conduct, excessive tardiness, absenteeism, or just cause if a situation cannot be solved through disciplinary action. Violations of the law or other seri-

ous actions can result in immediate dismissal.

Employees are given an opportunity to explain circumstances before final action is taken.

■ The trial court concluded this language was not definite enough to form the basis of a unilateral contract. We disagree and conclude summary judgment on this issue was inappropriate.[1] As the court stated in *Fitzgerald:*

We believe that the handbook language is definite enough to raise legitimate fact questions about whether the provisions constituted an offer, and whether [the employee's] subsequent actions constituted an acceptance such that the provisions became a part of the employment agreement and restricted the [employer's] right to terminate her employment. These questions are for a jury to resolve. Therefore, summary judgment on this issue was inappropriate.

*Fitzgerald,* 382 N.W.2d at 293. Similarly, in *Bratton,* the court stated:

We recognize that under Minnesota law there is no implied covenant of good faith and fair dealing in employment contracts. However, we feel that appellant should have the opportunity to present his case to a jury and if it finds that the employment handbook has modified the parties' employment contract to require good faith in discharge, then the same jury would be free to find that appellant's dismissal was in bad faith and that appellant is entitled to release.

*Bratton,* 438 N.W.2d at 119.

■ In the present case, Holman alleges that CPT acted in bad faith by discharging her specifically to avoid paying her commissions. A dismissal which is designed to avoid the payment of commissions to an employee will constitute bad faith entitling an employee to relief.

If the defendant's termination of [the employee's] employment was for the purpose of depriving him of his commissions, this would constitute bad faith. *Buysse v. Paine, Webber, Jackson & Curtis, Inc.,* 623 F.2d 1244, 1249 (8th Cir.1980) (citations omitted).

The record indicates that Holman was discharged the day after the Mayo sale was agreed to and shortly before the final meeting on December 10. Holman's supervisor was aware that the deal was close to completion, and in fact called Mayo the day after Holman was discharged. This evidence creates a factual dispute regarding the actual reason for Holman's dismissal. Summary judgment on this issue was therefore improper.

3. In her brief, Holman raises a claim of retaliatory discharge, citing *Hubbard v. United States Press International, Inc.,* 330 N.W.2d 428 (Minn.1983):

In order to establish a prima facie case where an alleged retaliatory discharge is involved, an employee must establish: (1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a casual connection between the two.

*Id.* at 444 (citation omitted). Holman claims the retaliation by CPT was in response to her grievance regarding her salary. Holman did not specifically raise this issue before the trial court; therefore, it is questionable whether it is properly before us. *See Plowman v. Copeland, Buhl & Co., Ltd.,* 261 N.W.2d 581, 583 (Minn.1977). Nevertheless, because Holman's pursuit of her grievance was not statutorily-protected conduct, Holman's claim must fail.

■ 4. Finally, Holman claims CPT was unjustly enriched when it failed to pay her the commissions from the Mayo sale. The trial court dismissed this claim as speculative, reasoning that Holman did not present any evidence that CPT had paid a smaller commission to Holman's successor when

---

1. Holman also argues CPT's administrative manual should be used as evidence of a unilateral contract. The trial court properly concluded that the manual was not distributed to all CPT employees; therefore, it could not be relied upon to support Holman's breach of contract claim. *See Skramstad v. Otter Tail County,* 417 N.W.2d 124, 126–27 (Minn.App.1987); *Tobias v. Montgomery Ward & Co., Inc.,* 362 N.W.2d 380, 382 (Minn.App.1985).

the Mayo deal was finalized. We believe, however, that the amount of CPT's payment to Holman's successor is irrelevant to the issue whether CPT benefited from failing to pay Holman's commission as well.

A claim for unjust enrichment does not lie simply because one party benefits from the actions of another; rather, the term "unjust enrichment" is used in the sense that the benefit has been gained illegally or unlawfully. *First National Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn.1981). An action for unjust enrichment may be founded upon failure of consideration, fraud, or mistake, or "situations where it would be morally wrong for one party to enrich himself at the expense of another." *Anderson v. DeLisle*, 352 N.W.2d 794, 796 (Minn.App.1984) (citations omitted).

If the rights of the parties are governed by a valid employment contract, recovery in quasi-contract is inappropriate. *See United States Fire Insurance Co. v. Minnesota State Zoological Board*, 307 N.W.2d 490, 497 (Minn.1981). However, if there is not a full agreement concerning the details of compensation, a party may recover the reasonable value of his services. *Frankson v. Design Space International*, 394 N.W.2d 140, 145 (Minn.1986). Here, there is a question of fact regarding Holman's entitlement to compensation for the Mayo sale.

### DECISION

The trial court erred by granting CPT's motion for summary judgment where material facts remained in dispute.

Reversed and remanded.