C. Thomas TURNER, Respondent,

v.

IDS FINANCIAL SERVICES, INC., f/k/a IDS Marketing Corporation, et al., petitioners, Appellants.

No. C3–90–267.

Supreme Court of Minnesota.

June 14, 1991.

John D. Levine, Michael J. Wahoske, Kathleen D. Sheehy, Dorsey & Whitney, Minneapolis, for appellants.

Stephen J. Snyder, Laurie A. Knocke, Kristen L. Peterson, Winthrop & Weinstine, St. Paul, for respondent.

SIMONETT, Justice.

When does the statute of limitations begin to run on an unfair employment discrimination practice claim resulting in job termination? At the time the employer gives the employee notice of termination, or at the time termination actually occurs? We think the former, and we reverse the court of appeals.

Plaintiff-respondent C. Thomas Turner was the Minneapolis division manager of defendant-appellant IDS Financial Services, Inc. On December 19, 1986, Turner was suspended from his managerial duties pending an investigation of allegations by subordinates that Turner had introduced an inappropriate religious atmosphere into the office.

Approximately 6 weeks later, on February 4, 1987, IDS hand-delivered a letter to Turner lifting his suspension. The letter went on, however, to say:

This is also notice of the termination of your [Employment] Agreements with IDS * * * on March 17, 1987, pursuant to the right to terminate those Agreements without cause on thirty days' written notice.

After being suspended on December 19, 1986, Turner never returned to his office or performed any work for IDS. The February 4th letter notifying Turner that he was being terminated 30 days hence also instructed Turner to make arrangements to go to the office "in the near future" to get his personal belongings.

On January 8, 1988, more than 300 days after he had received his notice of termination, but less than 300 days after actual termination, Turner commenced this lawsuit. His claims for breach of contract, defamation, and intentional infliction of emotional distress were dismissed on defendant's motion for summary judgment. Plaintiff also claimed that although his employment contracts permitted either party to terminate the contracts on 30 days' notice, that his termination was really a pretext for a discriminatory discharge based on age (Turner was 48) and religion, in violation of the Minnesota Human Rights Act. The defendant employer contended that the discrimination claim was barred by the Act's (then) 300–day statute of limitations. The trial court let plaintiff's discrimination claim stand, but certified to the appellate court as important and doubtful the following question:

In an employment discharge case, does the Statute of Limitations period contained in Minn.Stat. § 363.06 Subd. 3 commence to run on the Date of Termination or the Date of Notice of Termination?

The court of appeals, in a split decision, held that the statute of limitations commences on the date of termination. *Turner v. IDS Financial Services, Inc.*, 459 N.W.2d 143 (Minn.App.1990). We granted IDS' petition for further review.

The Minnesota Human Rights Act, Minn. Stat. § 363.06, subd. 3 (1986), provides that:

A claim of unfair discriminatory practice must be brought as a civil action * * * within 300 days after the occurrence of the practice. [Note: In 1988 the limitation period was extended from 300 days to 1 year.]

What does "occurrence of the practice" mean? Does the offending practice occur when the employer notifies the employee he is being discharged, as defendant IDS asserts? Or does it occur on the date employment officially ends, as the plaintiff Turner contends?

We have not yet decided this issue, although plaintiff argues otherwise. In *Richardson v. School Bd. of I.S.D. No. 271*, 297 Minn. 91, 210 N.W.2d 911 (1973), the school district's standing policy required teachers to resign when they reached the fifth month of pregnancy. As to when the statute of limitations began to run on a claim brought by an individual teacher affected by the district's pregnancy policy, we said: "We interpret the occurrence of the practice as set forth in this case to mean a discharge or required resignation, the date of which commences the statutory period of limitations." 297 Minn. at 98, 210 N.W.2d at 916. We added that if the teacher was given a leave of absence, the statute of limitations would commence at the end of the leave. *Id.* We did not, however, discuss when the limitations period would begin where an employer gives a specific notice of termination to an individual employee. Thereafter, in *Buchholz v. Capp Homes, Inc.*, 321 N.W.2d 893 (Minn. 1982), an age discrimination case, we stated that the date of discharge commenced the running of the statute of limitations under section 363.06, subd. 3, citing *Richardson*. Again, however, there was no notice of termination involved, consequently, the question of whether the giving of notice of discharge or the discharge triggers the limitations period was not discussed.

The court of appeals, however, has directly dealt with the question now before us. In *Fitzgerald v. Norwest Corp.*, 382 N.W.2d 290 (Minn.App.1986), *pet. for rev.*

*denied* (Minn., April 24, 1986), the court of appeals held that the limitations period on plaintiff's age discrimination claim began to run not when plaintiff was notified she was being terminated but when discharge actually occurred. *Id.* at 292. The court of appeals felt that *Richardson* and *Buchholz* indicated this court had chosen not to follow the rule in federal Title VII cases which holds that notice of termination begins the running of the statute of limitations. But, as already noted, neither *Richardson* nor *Buchholz* considered the distinction between notification of discharge and actual discharge; moreover, *Richardson* was decided before the United States Supreme Court adopted the federal rule in *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981).

In Title VII cases the United States Supreme Court has held that notice of discharge begins the running of the statute of limitations. *Chardon, supra.* While we are not bound to follow the federal rule, we have relied on principles developed under Title VII in construing the Minnesota Human Rights Act. *Carlson v. Independent Sch. Dist. No. 623,* 392 N.W.2d 216, 220 (Minn.1986). It appears almost all state courts which have addressed this issue have chosen to follow the federal rule.[1]

In construing the phrase "occurrence of the practice," *Chardon* and *Ricks* state "the proper focus is upon the discriminatory acts, not upon the time at which the consequences of the acts become most painful." *Ricks,* 449 U.S. at 258, 101 S.Ct. at 504. We, too, have adopted this analytical approach. *See Sigurdson v. Isanti Co.,* 448 N.W.2d 62, 67 (Minn.1989) (decid-

ing that gender discrimination was a continuing violation of our human rights act).

The arguments against using the notice of termination as the triggering event for limitations purposes (rather than date of termination) are set out in the *Chardon* dissenting opinions. They can be summarized as follows: The date of termination is usually more definite and easier to identify than the date of notice of termination; the notice of termination might be revoked before the date of discharge arrives; the compensable harm necessary to commence an action for money damages is usually not sustained until actual discharge; and, finally, using the date of notice of termination "would depart too sharply from the understanding of ordinary people." *Chardon,* 454 U.S. at 10, 102 S.Ct. at 30 (Stevens, J., dissenting).

The defendant employer disputes each of these arguments. It argues the date of termination also is not always easily identifiable (*e.g.,* whether the last day employee worked, or could have worked, or for which paid, etc.); the purpose of an employer's notice of termination is to give the discharged employee time to look for another job, not for the employer to change its mind; an action for injunctive relief and prospective salary loss can be commenced at date of notice of termination; and, finally, for most employees the notice of termination is a very significant event that alerts the employee to the need to seek legal advice.

All of the arguments on either side of the issue have merit in more or less degree; indeed, this is part of the problem, as the competing arguments tend to counterbalance each other. Perhaps a more helpful

**1.** *See, St. Petersburg Motor Club v. Cook,* 567 So.2d 488 (Fla.App. 2d Dist.1990); *Naylor v. W.Va. Human Rts. Comm'n,* 378 S.E.2d 843 (W.Va.1989); *Wapella Educ. Ass'n v. Illinois Educ. Labor Rel. Bd.,* 177 Ill.App.3d 153, 126 Ill.Dec. 532, 531 N.E.2d 1371 (Ill.App. 4th Dist. 1988); *Hilmes v. Department of Industry, Labor & Human Relations,* 147 Wis.2d 48, 433 N.W.2d 251 (Wis.App.1988); *Indep. Fire Co. No. 1 v. W.Va. Human Rts. Comm'n,* 376 S.E.2d 612 (W.Va.1988); *Quicker v. Colorado Civil Rts. Comm'n,* 747 P.2d 682 (Colo.App.1987); *Ambrose v. Natomas Co.,* 155 Cal.App.3d 397, 202 Cal.Rptr. 217 (Cal.App.1984); *Humphreys v. Riverside Mfg. Co.,* 169 Ga.App. 18, 311 S.E.2d 223 (1983); *Board of Governors v. Rothbardt,* 98 Ill.App.3d 423, 53 Ill.Dec. 951, 424 N.E.2d 742 (1981); *Horn v. Human Rts. Appeal Board,* 75 A.D.2d 978, 428 N.Y.S.2d 368 (1980); *Ching v. Mitre Corp.,* 921 F.2d 11 (1st Cir.1990) (applying Massachusetts law). *Contra: Board of Ed. v. Ohio Civil Rights Comm'n,* 66 Ohio St.2d 252, 421 N.E.2d 511 (1981) (predates *Chardon); Janikowski v. Bendix Corp.,* 823 F.2d 945 (6th Cir. 1987) (applying Michigan law).

approach is to take a closer look at the statutory language: "A claim of unfair discriminatory practice must be brought * * * within 300 days after the occurrence of the practice." In construing this language, we are committed to focusing on the discriminatory act rather than when the consequences of that act become most painful. *Sigurdson, supra.*

When an employee is terminated summarily, notice of discharge and discharge are one indivisible occurrence. Only when the two events are separated by a time interval does any ambiguity arise as to what is the "practice" and when does it "occur." When a time interval intervenes, three distinct events emerge: the decision to terminate for allegedly discriminatory reasons is made; notice of that decision is given the individual employee; and termination takes effect on the date stated in the notice.

The notice to terminate embodies the discriminatory decision, and the two together constitute the discriminatory act or practice. In this time sequence, what happens on the date of termination is seen more as a consequence of the discriminatory act. Thus *Chardon* says, "The fact of termination is not itself an illegal act." *Chardon*, 454 U.S. at 8, 102 S.Ct. at 29. It is the communicated notice of termination that causes the employment to end; and the fact that the last day of work (or. as in Turner's case, the last day of pay though not working) is some days hence makes the notice of termination no less effective.

By way of contrast, the limitation periods for tort and contract actions in chapter 541 begin to run, as our case law has determined, when the cause of action "accrues." Thus a breach of contract accrues on breach while a tort action accrues when some damages are sustained. The statute of limitations for a discrimination claim, however, is contained within the Act. When an unfair practice "occurs" is not quite the same as when a tort action "accrues," and it is unprofitable to push the comparison too far. Even so, when an unequivocal, unconditional notice of termination is given, the employee immediately attains a lame duck status and, prior to actual discharge, may well incur employment agency fees and sustain damages for "mental anguish and suffering" (see § 363.071, subd. 2). Put another way, if the discharged employee prior to the date of actual discharge obtains another job paying as well or better, we do not think the unfair discrimination claim is always or even usually gone.

The unfair discrimination claim must not be confused with an action for breach of an employment contract where the cause of action does not accrue and the statute of limitations does not begin to run until the breach, and where the breach is usually at actual discharge. There may or may not be a breach of contract involved in an employment discrimination situation, but the discrimination claim is a claim separate from any breach of contract, and, as we have seen, compensable harm from the discriminatory practice is sustained prior to actual discharge.

■ We hold, therefore, that in an unfair employment discrimination claim for job termination where an unequivocal, unconditional notice of termination is given, the statute of limitations begins to run from the time the notice of termination is received by the employee.

■ If we hold—as we have—that notice of termination is the significant event, plaintiff argues our decision should have only a prospective effect and should not apply to the parties in this case. Plaintiff says he was entitled to rely on *Fitzgerald*, 382 N.W.2d at 290, the court of appeals decision making the date of discharge the controlling event. We do not think a purely prospective decision is justified in this case. Assuming arguendo our decision is "new law," generally "the new rule [of law] is applied to the case before the court and to claims arising after the date of the overruling decision." *McGuire v. C & L Restaurant Inc.*, 346 N.W.2d 605, 614 (Minn.1984). We have made purely prospective rulings in only very limited situations. *See State v. Olson*, 258 N.W.2d 898, 907 n. 15 (Minn.1977) (where change in constitutional law affects criminal proceed-

ings); and *Nieting v. Blondell,* 235 N.W.2d 597, 603 (Minn.1975) (change in law of sovereign immunity).

Although the issue on appeal involved only a few simple facts, the parties included lengthy appendices to their briefs dealing with the substantive merits of the case. No costs for these superfluous materials should be taxable.

Reversed.

YETKA, Justice (dissenting).

I dissent and would affirm the court of appeals in holding that it is the date of discharge which ought to trigger the statute of limitations.

It appears to me that there are three good reasons to affirm the court of appeals: (1) a notice of discharge may never result in termination—the employer can change its mind; (2) a short 300–day limitation period is harsh and ought to be strictly construed; and (3) an actual discharge date is a better bright-line rule to follow.

GARDEBRING, Justice (dissenting).

I concur in the dissent of Justice Yetka.