**Marilee S. ELLIOTT, Appellant,**

**v.**

**MONTGOMERY WARD & COMPANY, Appellee.**

**No. 91–2544.**

United States Court of Appeals, Eighth Circuit.

Submitted March 9, 1992.

Decided June 30, 1992.

Rehearing Denied Aug. 17, 1992.

Gregg M. Corwin, Saint Louis Park, Minn., argued (Lauren Weiner Cohn, on the brief), for appellant.

Elizabeth Hoene Martin, St. Paul, Minn., argued (Elizabeth Hoene Martin, on the brief), for appellee.

Before JOHN R. GIBSON, Circuit Judge, LAY, Senior Circuit Judge, and LOKEN, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Marilee Elliott, after holding a number of department management jobs with Montgomery Ward, was told she must either transfer to a store twenty-four miles from home at a $9,000 per year salary reduction or accept a severance package. She accepted the severance package and brought this action alleging: (1) discrimination under the age discrimination provisions of the Minnesota Human Rights Act, Minn.Stat. § 363.03 subd. 1(2)(b) and (c) (1990); (2) intentional infliction of emotional distress; (3) emotional distress under Minn.Stat. § 363.03 subd. 1(2)(b) and (c); and (4) breach of contract. The district court granted summary judgment in Ward's favor on all claims. On appeal, Elliott argues that the district court erred in granting summary judgment on her age discrimination and breach of contract claims. We affirm the district court's dismissal of the breach of contract claims, but reverse the summary judgment on the age discrimination claim and remand this claim for further consideration.

Elliott began working for Ward as a cashier in 1964. Two years later, Ward promoted her to assistant manager. Beginning in 1968, she served as department manager of several different departments in Ward's Apache Plaza store. In 1982, when she was 43, Ward gave Elliott the option of a severance package or reassignment. She chose reassignment and became group merchandiser of ten departments for approximately two years, and then over a three-year period was transferred on several occasions. She received favorable job

evaluations and numerous awards from Ward based on her job performance.

In February 1987, Ward began reorganizing its Minneapolis and St. Paul operations. Elliott's district manager and store manager told Elliott that her position had been eliminated and the responsibilities divided among two younger employees, Nancy Harris, age 33, and Julie Grant, age 26. During the meeting, the district manager told Elliott that "the company was growing so rapidly that she would not be able to keep up with how fast the company was growing." Ward gave Elliott the option of involuntarily transferring to a Ward store some twenty-four miles from her home at a $9,000 salary reduction, or accepting a severance package. Ward gave Elliott two days to make a decision, and she accepted the severance package. She was 47 years old at the time of her resignation and had worked at Ward for 23 years. She brought this action in Minnesota state court under the age discrimination provision of the Minnesota Human Rights Act and also asserted claims for emotional distress and breach of an employment contract.

Ward removed the case to district court on diversity grounds, and filed a partial motion for summary judgment. The district court first considered Elliott's age discrimination claim. It analyzed Elliott's claim as a disparate treatment case and applied the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as adopted by *Schlemmer v. Farmers Union Central Exchange*, 397 N.W.2d 903, 907 (Minn.Ct.App.1986). *Elliott v. Montgomery Ward & Co.*, No. 4–89–646 slip op. at 4 (D.Minn. Nov. 27, 1990). Under that analysis, a discharged employee carries the initial burden of establishing a prima facie case of age discrimination by showing: (1) she is a member of a protected class; (2) she was qualified for the job from which she was discharged; (3) she was discharged; and (4) the employer assigned a nonmember of the protected class to do the same work. Slip op. at 5 (citing *Hubbard v. United Press Int'l*, 330 N.W.2d 428, 442 (Minn.1983)). Because this case involved a reduction in force, the district court applied this court's decision in *Holley v. Sanyo Manufacturing, Inc.*, 771 F.2d 1161 (8th Cir.1985). In reduction in force cases, *Holley* requires an employee to also make "some additional showing" that age was a factor in the employer's decision to establish a prima facie age discrimination case. *Id.* at 1165.

The district court concluded that Elliott carried her initial burden of satisfying the first four elements under *McDonnell Douglas*. Slip op. at 5–8. *See also Elliott v. Montgomery Ward & Co.*, No. 4–89–646, slip op. at 13 (D.Minn. May 29, 1991). Nevertheless, the court concluded that Elliott failed to produce "other evidence" of discrimination as required by *Holley*. Slip op. at 8–9 (Nov. 27, 1990). The court ruled that the statement Ward "was growing so rapidly [plaintiff] would not be able to keep up with how fast [the company] was growing," did not suffice as other evidence, concluding that the statement did "not directly relate to [Elliott's] age." *Id.* at 8. As Elliott relied on this single statement to satisfy the increased burden in a reduction in force case, the district court concluded that she failed to carry her burden of proof and granted summary judgment in favor of Ward. *Id.* at 9. The court also granted summary judgment for Ward on Elliott's claim of intentional infliction of emotional distress, *id.* at 9–11, and emotional distress under Minn.Stat. § 363.03 subd. 1(2)(b) and (c). *Id.* at 11.

Elliott filed a motion for reconsideration. The court denied reconsideration of the age discrimination claim, rejecting Elliott's arguments that discovery was incomplete on the date of the hearing, and that Elliott and the other two employees were not uniformly evaluated. *Elliott v. Montgomery Ward & Co.*, No. 4–89–646, slip op. at 17–18 (D.Minn. May 29, 1991). The district court also concluded that Ward was entitled to summary judgment on Elliott's breach of contract claim because no breach occurred. *Id.* at 16. Elliott appeals the district court's dismissal of her age discrimination and breach of contract claims.

## I.

Elliott attacks the propriety of summary judgment on the age discrimination claim by first arguing that she complied with *Holley* and set forth additional evidence to show that age was a factor in Ward's employment decision.[1] In the alternative, Elliott argues that this court should modify the rule in *Holley* by eliminating the fifth requirement of showing that age was a factor in the employment decision. Elliott particularly relies on the Seventh Circuit's decision in *Oxman v. WLS–TV*, 846 F.2d 448 (7th Cir.1988), and asks that we follow *Oxman*. Ward responds that this court properly decided *Holley* and that we should adhere to it.

In *Holley*, this court concluded that "some additional showing" of discrimination is required to make a prima facie case in reduction in work force cases. 771 F.2d at 1165. This court later applied the additional element in cases brought under the Minnesota Human Rights Act, *Kypke v. Burlington Northern R.R. Co.*, 928 F.2d 285, 286 (8th Cir.1991). We are bound by *Kypke* under principles of stare decisis. Only the court en banc could grant the relief Elliott requests.

There are at least two additional reasons why we should not embark on the path suggested by Elliott. The first is that the issue before us is one of Minnesota state law; the issue is material here only because *Kypke* applied our decision in *Holley* to claims under the Minnesota Human Rights Act. If *Holley* is to be reconsidered, and we are not persuaded that it should be, it should be in a case in which the federal Age Discrimination in Employment Act is an issue, not when the issue is only indirectly involved in determining a Minnesota claim. The other reason is that, as we will shortly explain, we are convinced that Elliott has complied with *Holley*.[2]

■ For purposes of appeal, Ward concedes that Elliott satisfies the first three elements of a prima facie age discrimination case.[3] Ward argues, however, that Elliott failed to prove that a non-member of a protected class was assigned to do the *same* work because the job responsibilities for the two newly created positions changed. This argument is disingenuous. The "same work" requirement obviously refers to the newly created position. *See, e.g., Johnson v. Minnesota Historical Society*, 931 F.2d 1239, 1242 (8th Cir.1991) ("proof necessary will vary according to the circumstances of the case."); *Leichihman v. Pickwick Int'l*, 814 F.2d 1263, 1270 (8th Cir.) (when company eliminated position entirely, plaintiff may show that company had "some continuing need for his skills and services"), *cert. denied*, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987).

■ Elliott argues that the district court erred in concluding that she failed to show

---

1. Elliott concedes that this is not a disparate impact case. Elliott claims that this is a disparate treatment case, and that Ward treated her less favorably with respect to the terms of her employment during its 1987 reduction in force.

2. If we wrote on a blank slate, we would question whether Minnesota courts have applied *Holley* in reduction in force cases. We read *Rademacher v. FMC Corp.*, 431 N.W.2d 879 (Minn.Ct.App.1988), to incorporate the reduction in force consideration in the second stage of the *McDonnell Douglas* analysis dealing with the articulation of a nondiscriminatory reason for discharge. *Id.* at 882–83. Although *Rademacher* cited *Holley*, it set out only four elements of a prima facie age discrimination case and made no mention of the fifth factor we announced in *Holley*. *Id.* One unpublished Minnesota Court of Appeals decision has specifically applied *Holley*, *Hartzell v. Patterson Dental Co.*, No. C9–91–1322, slip op. at 8, 1992 WL 20742 (Minn.Ct.App.1992). Minn.Stat. § 480A.08 subd. 3 (1990) states, however, that "[u]npublished opinions of the court of appeals are not precedential." Certainly, Minnesota state courts are at liberty to define the requirements of a prima facie case as they see fit. Insofar as *Hartzell* may be contrary to *Rademacher*, this is an issue for Minnesota courts to resolve. While *Kypke* applied *Holley* to an age claim brought under the Minnesota Act, we are not altogether sure that the issue of whether or not it should do so was squarely raised.

3. Despite this concession, Ward devotes substantial attention in its brief to the issue of Elliott's qualifications. Elliott produced evidence that she received favorable evaluations, promotions, and numerous awards from Ward based on her job performance. In addition, she worked for Ward for 23 years. Thus, Elliott's qualification for the job is a disputed fact question.

that age was a factor in Ward's employment decision. Elliott points to the statement made by her manager that "the company was growing so rapidly that she would not be able to keep up with how fast the company was growing." The district court concluded that this statement "does not directly relate to plaintiff's age," and thus, concluded that Elliott failed to establish a prima facie case. Slip op. at 8–9 (Nov. 27, 1990). We conclude, however, that the statement is sufficient to establish a prima facie case. We believe that this statement is sufficiently close to the line that in the light most favorable to Elliott, and given all favorable inferences, a factfinder could reasonably conclude that this statement demonstrated that age was a factor in Ward's employment decision. We held that similar statements were sufficient to establish a disputed fact question as to whether age was a factor in an employer's decision in *Johnson*, 931 F.2d 1239. In that case, the employee had been called a "blind old bat," and mocked about his back problems. *Id.* at 1244. A superior also testified that "younger" archaeologists had "new ideas [and] fresh enthusiasm." *Id.* Based on this testimony, we concluded that a question of fact existed as to whether the employee's age was a determining factor in the employer's actions. *Id.* Likewise, here, we conclude that a question of fact exists as to whether Elliott's age was a factor in Ward's employment decision. Accordingly, the district court erred in concluding that Elliott failed to establish a prima facie case of age discrimination.

Under the *McDonnell Douglas* analysis, establishing a prima facie case of age discrimination does not end our inquiry. After an employee establishes a prima facie

case, the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its employment decision.[4] *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Williams v. Valentec Kisco, Inc.*, 964 F.2d 723, 726 (8th Cir.1992). If the employer comes forward with such a reason, the burden shifts back to the employee to demonstrate that the proffered reasons was merely a pretext for intentional discrimination. The employee may succeed in this "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."[5] *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). The plaintiff at all times retains the burden of production. *Id.*

Elliott argues that pretext is shown by Ward's evaluation process. Elliott claims that the evaluation process is "inherently subjective," and therefore, "subject to abuse." Elliott also says that the same manager did not evaluate her, Harris and Grant in Ward's 1986 mid-year performance reviews, and that Harris was subject to a different evaluation and that these facts demonstrate that Ward failed to apply uniform methods of evaluation.

The district court concluded that Ward's evaluation process is "inherently subjective in that the person conducting the evaluation must decide on the rating the employee is to receive...." Slip op. at 8 (Nov. 27, 1990). Nevertheless, the court found that the same manager evaluated Elliott, Grant, and Harris, and that the three were rated according to the same objective performance scale. *Id.* Based on this, the district

---

**4.** As we recently explained in *Williams v. Valentec Kisco, Inc.*, 964 F.2d 723 (8th Cir.1992), such an analysis is not necessary in direct evidence cases. Op. at 728. Elliott, however, does not argue that this is a direct evidence case.

**5.** Elliott based her breach of contract claim on the alleged age discrimination. In its analysis of this claim, the district court concluded that Ward's reduction in force constituted a legitimate, nondiscriminatory reason for discharge. Slip op. at 13 (D.Minn. May 29, 1991). Elliott

does not dispute this finding. The district court further concluded that Elliott failed to show that a genuine issue of fact existed that Ward's reason was pretextual, and thus, entered summary judgment for Ward on Elliott's breach of contract claim. *Id.* at 15. That the analysis went this far demonstrates some potential inconsistency in the prima facie case requirements between the age discrimination and breach of contract claims and is further support for our holding that Elliott established a prima facie case of age discrimination.

court concluded that no genuine issue of fact existed that Elliott "was fairly compared to the two employees who were selected to replace her and that they were better qualified" than Elliott. *Id.*

■ We see nothing in Elliott's claim that raises a genuine issue of material fact as to Ward's evaluation process. Contrary to Elliott's implication, *Rademacher*, 431 N.W.2d 879, does not hold that a subjective evaluation process demonstrates pretext. *Rademacher* does not condemn subjective evaluation processes; rather, it requires that such evaluation processes be uniformly applied. *Id.* at 883. Here, there is no evidence that Ward's evaluation process was not uniformly applied. It is undisputed that Elliott, Harris, and Grant, at the time they were all group merchandisers, were subject to the same performance reviews and evaluated by the same manager. That an evaluation process contains some subjective components cannot in and of itself prove pretext or discriminatory intent. *See Goetz v. Farm Credit Serv.*, 927 F.2d 398, 404 (8th Cir.1991). Likewise, that Harris's 1986 mid-year evaluation differed in format and criteria from Elliott's is of no consequence. Harris was not a group merchandiser at that time.

■ Elliott also argues that the supervisor's statement that she could not "keep up" with the company demonstrated pretext. Evidence used to establish a prima facie case in some cases may also establish pretext. *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 494 (8th Cir.1990). This circuit also recently held that a statement analogous to the one here bordered on direct evidence and was further support for establishing pretext. *Williams*, 964 F.2d at 728. (Supervisor asking why "an old man [was] carrying the boxes"). Accordingly, we conclude that Elliott met her burden of proof, and the district court erred in entering summary judgment on Elliott's age discrimination claim.

## II.

■ Elliott next claims that the district court erred in entering summary judgment on her breach of contract claim. Elliott claims that the employee handbook and personnel policies constituted an employment contract.[6] The district court did not decide whether Ward and Elliott formed a contract based on the employee manual or personnel policies. Slip op. at 11 (May 29, 1991).

■ In Minnesota, a personnel policy handbook may become enforceable as an employment contract if it meets the requirements for formation of a unilateral contract. *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn.1983). An offer must be more definite than an employer's general statement of policy. *Id.* at 626; *Fitzgerald v. Norwest Corp.*, 382 N.W.2d 290, 292–93 (Minn.Ct.App.1986).

Elliott specifically claims that Ward breached two provisions of its employee manual. First, she points to a provision of the manual which provides that "[a]ll personnel actions ... are administered without regard to race, color, sex, national origin, [or] age...." Second, she relies on the personnel policy which says that all employees will be evaluated on a "uniform method." Based on these provisions, Elliott contends that Ward breached its employment contract by discriminating against her on the basis of age and by failing to apply uniform methods of evaluation.

■ Reviewing Elliott's state law claim de novo, *Salve Regina College v. Russell*, — U.S. —, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991), we first conclude that the nondiscrimination provision of the manual is nothing more than a general policy statement, and thus, is insufficient to give rise to a unilateral employment contract. *Pine River*, 333 N.W.2d at 626. The Minnesota Court of Appeals considered a

**6.** Ward responds that Elliott was an at-will employee who could be terminated at any time and without cause, and thus, cannot maintain a breach of contract action. Elliott's status as an at-will employee does not necessarily preclude

her from bringing a breach of contract action based on specific provisions of an employee manual. *See Pine River v. Mettille*, 333 N.W.2d 622, 629–30 (Minn.1983).

nondiscrimination policy in *Fitzgerald*, 382 N.W.2d at 292–93, and concluded that the language in the employee handbook was definite enough to raise a genuine issue of fact about whether the provisions constituted an offer of employment. *Id.* at 293. The provisions were similar to the one in issue here, but also provided that the nondiscrimination policy was "more than just a statement," explained a specific affirmative action program, and encouraged persons to seek employment with knowledge of the program and policy. *Id.* These latter provisions of the policy formed the basis for the court's decision in *Fitzgerald*, and are not contained in the Ward personnel manual.

Elliott also claims that Ward breached its employment contract by failing to provide and apply a uniform method of evaluation. Elliott again claims that evidence of lack of uniformity is proven by Ward's failure to evaluate Elliott, Grant, and Harris according to the same criteria or by the same supervisor.

■ We reject Elliott's argument. First, the language in the policy manual is general, and thus, cannot form the basis for a contract. Moreover, even if the language were sufficiently definite to form a contract, as we have previously discussed, no evidence suggests that Ward breached this provision. As the district court found, Elliott was subject to the same evaluation process as Harris and Grant. Accordingly, we affirm the district court's dismissal of Elliott's breach of contract claim.[7]

We affirm the district court's dismissal of Elliott's breach of contract claim, reverse the district court's order as to the age discrimination claim, and remand this claim for trial.

LOKEN, Circuit Judge, concurring in part and dissenting in part.

I would affirm the judgment of the district court for the reasons stated in the

district court's memorandum Orders of November 27, 1990, and May 29, 1991.

---

7. Ward also argues that the district court erred in denying its motion for sanctions. It is not clear whether Ward properly preserved this issue for appeal. In any event, we cannot conclude that the district court abused its discretion in denying Ward's motion.