Yvette FORD, Appellant,

v.

**MINNEAPOLIS PUBLIC SCHOOLS, Respondent.**

No. A13–1072.

Court of Appeals of Minnesota.

April 21, 2014.

Christopher Joseph Kuhlman, Kuhlman Law, PLLC, Minneapolis, MN, for appellant.

Lateesa Thamani Ward, Ward & Ward, Minneapolis, MN, for respondent.

Considered and decided by PETERSON, Presiding Judge; HUDSON, Judge; and STAUBER, Judge.

## OPINION

PETERSON, Judge.

In this appeal from a summary judgment dismissing a whistleblower claim on the ground that it was barred by the statute of limitations, appellant argues that the district court erred in determining that (1) the limitations period began to run on the date that appellant was notified that her job was being eliminated and (2) equitable estoppel did not apply to toll the statute of limitations. We affirm the summary judgment and deny respondent's motion to strike.

## FACTS

Appellant Yvette Ford began working for respondent Minneapolis Public School District's English Language Learner's Department (ELL) as an independent contractor in November 2006. ELL is a subdivision of respondent's Multi–Cultural Multi–Language department (MCML). In January 2007, appellant became permanently employed by respondent as MCML's public-relations director.

During the summer of 2007, appellant reported financial improprieties and budget discrepancies to the school-district superintendent and to a staff person. Appellant alleges that, during the next several months, her workload dramatically increased and so did mistreatment of her by coworkers and her supervisor. On April 22, 2008, the supervisor told appellant that her job was going to be "excessed," which meant that it would be eliminated for the next school year.

On May 22, 2008, appellant met with an attorney employed as the director of respondent's office for diversity and equal opportunity to discuss the reported financial improprieties and the harassment of appellant. Appellant stated in an affidavit that the director "told me that she was a 'neutral' party to my dispute and that she would preserve my rights and civil rights related to my Complaint and that she would guide me through the process." Appellant stated that, due to the director's representation that appellant's "rights were preserved, I did not go to the EEOC or file any other lawsuit because I assumed she was investigating my case and that my rights had been protected as she had said."

Appellant's last day of work in the ELL department was June 30, 2008. On May 5, 2009, having not heard from the director, appellant contacted the Minneapolis Department of Civil Rights and filed a discrimination charge with the department. Appellant initiated this lawsuit on June 29, 2010. Respondent removed the action to federal district court. The federal district court dismissed appellant's federal claims and remanded her whistleblower claim to state court. In dismissing appellant's federal claims, the federal district court rejected appellant's argument that, based on the director's representation, respondent should be equitably estopped from asserting that appellant failed to timely file a discrimination charge. Respondent does not assert that collateral estoppel applies to bar appellant from asserting equitable estoppel as to her whistleblower claim.

Respondent moved for summary judgment in state court on appellant's whistleblower claim. Following *Larson v. New Richland Care Ctr.,* 538 N.W.2d 915, 921 (Minn.App.1995), *review denied* (Minn. Mar. 4, 1997), the district court determined that the two-year statute of limitations applicable to intentional torts applied to appellant's whistleblower claim. The district court granted summary judgment for respondent based on its conclusions that the statute of limitations began running on April 22, 2008, when appellant was notified that her job was being excessed, and was not tolled under the doctrine of equitable estoppel.

This appeal followed. The only issues raised by appellant on appeal are whether the district court erred in determining that the statute of limitations began running on April 22, 2008, and that the statute was not tolled under the doctrine of equitable estoppel. This court granted respondent's motion to strike an extra-record document and references to it from appellant's brief and appendix but deferred to the panel deciding the case on the merits respondent's motion to strike appellant's argument regarding the triggering event for the running of the limitations period.

## ISSUES

I. Did the statute of limitations begin running when appellant was notified that her job would be eliminated?

II. Did the district court err in concluding that as a matter of law the statute of limitations was not tolled under the doctrine of equitable estoppel?

## ANALYSIS

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. We review the district court's grant of summary judgment de novo to determine whether there are genuine issues of material fact and whether the district court erred in applying the law. *Mattson Ridge, LLC v. Clear Rock Title, LLP*, 824 N.W.2d 622, 627 (Minn.2012). A party opposing summary judgment may not rest on "mere averments or denials . . . but must present specific facts showing that there is a genuine issue for trial." Minn. R. Civ. P. 56.05. "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76–77 (Minn.2002).

### I.

■ Respondent moved to strike appellant's argument on appeal that the statute of limitations began running on her last day of work, June 30, 2008, because it is a theory raised for the first time on appeal. In the memorandum opposing summary judgment, appellant argued to the district court that the statute of limitations was tolled under the doctrine of equitable estoppel. But at the summary-judgment hearing, the district court questioned when the claim accrued and the statute of limitations began running. Appellant's counsel stated that there were several dates that the court could consider in determining the limitations period, including appellant's "last day of work when she knew she didn't have a job . . . June 30, 2008." Because the issue of when the statute of limitations began running was raised at the summary-judgment hearing and addressed by the district court in its decision, it is properly before this court on appeal,

and we deny respondent's motion to strike appellant's argument.

■ Under the whistleblower statute, it is an unfair practice for an employer to discriminate against an employee who in good faith reports or refuses to participate in unlawful conduct. Minn.Stat. § 181.932, subd. 1 (2012). The statute provides that an employer shall not discharge, discipline, threaten, or otherwise discriminate against or penalize an employee because she in good faith reports a violation of any federal or state law. *Id.*, subd. 1(1).

In *Turner v. IDS Fin. Servs., Inc.*, 471 N.W.2d 105, 108 (Minn.1991), the supreme court held that the statute of limitations for a claim under the Minnesota Human Rights Act (MHRA) begins running when "an unequivocal, unconditional notice of termination is given." The statute of limitations in the MHRA required an action to be commenced "within 300 days after the occurrence of the practice." *Id.* at 106. The supreme court explained:

When an employee is terminated summarily, notice of discharge and discharge are one indivisible occurrence. Only when the two events are separated by a time interval does any ambiguity arise as to what is the "practice" and when does it "occur." When a time interval intervenes, three distinct events emerge: the decision to terminate for allegedly discriminatory reasons is made; notice of that decision is given the individual employee; and termination takes effect on the date stated in the notice.

The notice to terminate embodies the discriminatory decision, and the two together constitute the discriminatory act or practice. In this time sequence, what happens on the date of termination is seen more as a consequence of the discriminatory act. . . . It is the communi-

cated notice of termination that causes the employment to end; and the fact that the last day of work ... is some days hence makes the notice of termination no less effective.

*Id.* at 108. Applying this analysis, the supreme court held "that in an unfair employment discrimination claim for job termination where an unequivocal, unconditional notice of termination is given, the statute of limitations begins to run from the time the notice of termination is received by the employee." *Id.*

◼ Like the whistleblower statute, the MHRA prohibits "unfair employment practice[s]." Minn.Stat. § 363A.08 (2012). Under the whistleblower statute, an employee must show a causal connection between the employee's report of unlawful conduct and the employer's discriminatory action. In this case, the employer's alleged discriminatory action was the decision to eliminate appellant's position. Although the *Turner* court noted that the MHRA contains its own statute of limitations, the focus of the analysis was on what action constituted the "unfair practice" that triggered the statute of limitations. *Id.* Because both the MHRA and the whistleblower statute prohibit unfair employment practices, we conclude that the *Turner* analysis applies to this case and, therefore, the district court properly determined that the statute of limitations on appellant's whistleblower claim began running on April 22, 2008, when appellant was notified that her position would be eliminated for the next school year.

## II.

◼ To establish a claim of equitable estoppel, the plaintiff must show that "defendant made representations or inducements, upon which plaintiff reasonably relied, and that plaintiff will be harmed if the claim of estoppel is not allowed." *N. Pe-*

*trochemical Co. v. U.S. Fire Ins. Co.,* 277 N.W.2d 408, 410 (Minn.1979). While estoppel is ordinarily a question of fact, when only one inference can be drawn from the facts, estoppel is a question of law. *City of North Oaks v. Sarpal,* 797 N.W.2d 18, 23 (Minn.2011).

◼ Appellant stated in an affidavit that the director of the office for diversity and equal opportunity represented "that she was a 'neutral' party to my dispute and that she would preserve my rights and civil rights related to my Complaint and that she would guide me through the process." Appellant argues that she relied on this representation because the director "is a licensed attorney and advised [appellant] that she was preserving her rights as a neutral in the case." But, in the same affidavit, appellant also stated:

4. On May 5, 2009, I was frustrated that I had not heard anything from [the director] in regards to my Complaint or rights, so I took it upon myself to contact the Minneapolis Department of Civil Rights.

5. When I called the Mpls Department of Civil Rights on May 5, 2009, I spoke with an individual named, Omar, on the phone. Omar told me that employers frequently delayed in responding to complainants in the hopes that their statute of limitations period would expire, precluding the complainants' ability to bring a lawsuit. He told me to come down to his office as soon as possible and he would help me to file a charge.

6. I went to the Mpls Department of Civil Rights Office I believe on that same day on May 5, 2009 and Omar assisted me in filing a charge.

Even if the director made a misrepresentation to appellant, the only inference that can be drawn from appellant's affida-

vit is that it was no longer reasonable for appellant to rely on the misrepresentation as of May 5, 2009, which was almost one year before the limitations period expired. The district court, therefore, properly concluded that the statute of limitations was not tolled under the doctrine of equitable estoppel. *See Ochs v. Streater,* 568 N.W.2d 858, 860 (Minn.App.1997) (concluding that equitable estoppel did not toll statute of limitations when plaintiff "offered no evidence that circumstances beyond his control prohibited him from serving his complaint within the statutory period"); *see also Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 453 (7th Cir. 1990) (stating that, in equitable-tolling cases, the statute of limitations typically has run before the plaintiff knew of her claim and that, when "the necessary information is gathered after the claim arose but before the statute of limitations has run, the presumption should be that the plaintiff could bring suit within the statutory period and should have done so").[1]

## DECISION

The district court properly granted summary judgment for respondent on the grounds that the statute of limitations on appellant's whistleblower claim began running on the date when appellant was notified that her job would be eliminated and was not tolled under the doctrine of equitable estoppel.

**Affirmed; motion denied.**

---

1. Without citing any authority, appellant argues that the district court erroneously applied the higher standard that applies when a claim of estoppel is asserted against the government. *See City of Minneapolis v. Minneapolis Police Relief Ass'n,* 800 N.W.2d 165, 176 (Minn.App.2011) (explaining standard applied when equitable estoppel is asserted against government). Because appellant's estoppel claim fails under the ordinary standard, we need not address whether the standard applicable to the government applies to a school district. We may affirm a summary judgment if it can be sustained on any grounds. *Doe 76C v. Archdiocese of St. Paul,* 817 N.W.2d 150, 163 (Minn.2012).