851 F.Supp. 1369 (1994)
William HERMELING, Plaintiff,
v.
MONTGOMERY WARD & CO., INCORPORATED, Defendant.
No. 3-93 Civ. 442.
United States District Court, D. Minnesota, Third Division.
April 6, 1994.
*1370 *1371 *1372 The Cooper Law Firm by Stephen W. Cooper, Minneapolis, MN, for plaintiff.
Doherty, Rumble & Butler Professional Ass'n by Elizabeth Hoene Martin, and Peter E. Hintz, Saint Paul, MN, for defendant.

ORDER
ALSOP, Senior District Judge.
This matter came before the Court on January 28, 1994, on the defendant's motion for summary judgment. In this employment discrimination action, William Hermeling alleges that Montgomery Ward & Co., Incorporated ("Montgomery Ward") discriminated against him on the basis of his age and disability. Montgomery Ward argues that it is entitled to summary judgment because each of Hermeling's claims fail as a matter of law.

I. BACKGROUND
The defendant, Montgomery Ward, operates department stores across the country. In each store, groups of departments are managed by group merchandisers, who, in turn, are supervised by the store manager. Stores in geographic proximity are grouped into management units called areas and assigned an area manager. Areas are then grouped into territories. Each territory has a territory operations manager and a territory vice president. Montgomery Ward's corporate headquarters are located in Chicago.
The plaintiff, Hermeling, began working for Montgomery Ward in 1968. At all times relevant to this lawsuit, Hermeling was working as the "four seasons group merchandiser" at the Montgomery Ward store in the Rosedale Shopping Center in Roseville, Minnesota (the "Roseville store"). The Roseville store is part of the St. Paul area, which previously was one of nine areas in the east territory.
In late December of 1990 or early January of 1991, Montgomery Ward's senior management in Chicago decided that store expenses needed to be reduced. The store operations expense control department and its manager, William Bass, were responsible for suggesting how these expenses could be cut. In January of 1991, Bass recommended eliminating each of following positions on a nationwide basis: all "four seasons group merchandisers," all "third apparel group merchandisers," all "department 24 specialty managers," all "customer accommodations center managers," and all "operations managers." These recommendations were approved by the president of store operations, Dick Bergal.
Bass's department then proceeded to implement these recommendations by informing the territory operations managers of the *1373 necessary reductions, which were to be accomplished by early February of 1991. Territory operations managers were able to seek exceptions to the reductions on an individual basis based upon the needs of their operations. At all times relevant to this lawsuit, Doug Rau was the territory operations manager for the east territory. By January 21, 1991, eighty-five of the one-hundred-and-two national four seasons group merchandiser positions had been eliminated. Seventeen four seasons group merchandiser positions remained, due to exceptions requested by territory operations managers. Hermeling's position at the Roseville store was one of these seventeen remaining positions.
During the summer of 1991, Montgomery Ward's senior management determined that additional reductions were needed. Bass's department made further recommendations, including the elimination of the remaining four seasons group merchandisers. These recommendations were also accepted, and a deadline of August 9, 1991 was established for their implementation. Once again, territory operations managers were able to seek exceptions based upon the needs of a specific store. Of the seventeen remaining four seasons group merchandiser positions, fourteen were eliminated in the second round of cuts. Hermeling's position at the Roseville store was among those eliminated.
On July 30, 1991, the Roseville store manager, William Marcinkus, met with Hermeling to inform him that his position had been eliminated. At that time, Hermeling was fifty-eight years old[1] and was earning approximately $28,700 per year. At this meeting, Marcinkus gave Hermeling the option of accepting either a new position as a commissioned sales associate or a severance package. On August 9, 1991, Hermeling accepted the severance package and left the company.
While he was employed at Montgomery Ward, Hermeling experienced a variety of health problems. In May of 1991, Hermeling began treatment for a blood condition that was eventually identified as anemia. Hermeling's doctor considered this condition "resolved" as of August 8, 1991, the day before Hermeling accepted his severance package and left Montgomery Ward.
Hermeling also has a history of migraine headaches referred to as "cluster headaches." At times, the severity of these headaches forced Hermeling to leave the sales floor and lie down. Hermeling last experienced these headaches in July of 1989.
On July 11, 1991, Montgomery Ward hired Melissa Skiba as a customer service training associate. Skiba, who was twenty-one years old at that time, was scheduled to begin work on July 24. Before that date, however, she was told that the customer service training program was being discontinued. Instead, Skiba was offered a position as the home store sales manager, a non-exempt position, in which she was supervised by the home store group merchandiser.
Two and a half weeks after Skiba began working at the Roseville store as the home store sales manager, the home store departments were rearranged. Skiba's position was eliminated, and she was offered the position of soft home manager, a salaried, management position with a salary of $19,000 per year. In this position, Skiba was responsible for several departments that previously had been part of Hermeling's four seasons group.
Hermeling brought this action on June 21, 1992. In his complaint, Hermeling asserts claims for age discrimination in violation of the Minnesota Human Rights Act (Count 1), disability discrimination in violation of the Minnesota Human Rights Act (Count 2), negligent supervision (Count 3), negligent training (Count 4), and breach of contract (Count 5).
On September 25, 1992, the magistrate judge issued a pre-trial schedule that established deadlines for filing various motions and for disclosing expert witnesses and their opinions. The pre-trial schedule required Hermeling to disclose his expert witnesses, "the subject matter on which the expert is expected to testify," and "the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion" by June 1, 1993. *1374 Montgomery Ward was required to disclose this same information by July 1, 1993. The pre-trial order also established a September 1, 1993 deadline for discovery motions and a November 1, 1993 deadline for dispositive motions. On June 8, 1993, the parties agreed to extend the deadlines for expert witness disclosures to October 1, 1993 for Hermeling and November 1, 1993 for Montgomery Ward. This agreement was not reduced to a written stipulation and proposed order, as good practice would normally dictate.
On August 31, 1993, one day before the deadline for discovery motions, Hermeling's counsel brought a motion to compel additional discovery. This motion related to written interrogatories and document requests to which Montgomery Ward had originally responded on January 27, 1993. Montgomery Ward had also updated its responses in February, May, and July of 1993. At no time prior to bringing the motion to compel did Hermeling's counsel complain about Montgomery Ward's previous responses. Following a hearing on October 12, 1993, the magistrate judge granted Hermeling's motion to compel by order dated November 15, 1993.
Oral argument on this motion was originally scheduled for November 5, 1993.[2] Under this district's local rules, Montgomery Ward's motion papers and supporting memorandum were due on October 8, 1993, one week after the stipulated deadline for disclosing expert witnesses.[3] On October 12, 1993, Hermeling's counsel informed Montgomery Ward that Ross Azevedo, an expert witness, was "expected to testify on behalf of [Hermeling] by performing a statistical analysis of Montgomery Wards [sic] employment practices." (Martin Aff. Ex. E.) This disclosure did not set forth the nature of Azevedo's opinions. Instead, the disclosure simply stated that Azevedo would base his testimony on information that had been provided and on outstanding discovery that had yet to be provided.

II. ANALYSIS

A. The Summary Judgment Standard
The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986); Hegg v. United States, 817 F.2d 1328, 1331 (8th Cir.1987). Summary judgment is proper, however, only if examination of the evidence in a light most favorable to the non-moving party reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986).
The test for whether there is a genuine issue over a material fact is two-fold. First, the materiality of a fact is determined from the substantive law governing the claim. Only disputes over facts that might affect the outcome of the suit are relevant on summary judgment. Liberty Lobby, 477 U.S. at 252, 106 S.Ct. at 2512. Second, any dispute over material fact must be "genuine." A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. Id. It is the non-moving party's burden to demonstrate that there is evidence to support each essential element of his claim. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553.

B. Age Discrimination
In Count 1, Hermeling alleges that Montgomery Ward discriminated against him on the basis of his age. This claim is brought under the Minnesota Human Rights Act, which makes it unlawful for an employer to discharge an employee because of his or her age. Minn.Stat. § 363.03, subd. 1(2)(b).
Hermeling has asserted claims under both disparate treatment and disparate *1375 impact theories of discrimination. In disparate treatment claims, "[t]he employer simply treats some people less favorably than others because of their [protected status]. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." Hubbard v. United Press Int'l Inc., 330 N.W.2d 428, 441 n. 12 (Minn.1983) (quoting International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335-36 n. 15, 97 S.Ct. 1843, 1854-55 n. 15, 52 L.Ed.2d 396 (1977)). In contrast, disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Proof of discriminatory motive ... is not required under a disparate-impact theory." Id.
Both disparate treatment and disparate impact age discrimination claims under the Minnesota Human Rights Act are evaluated under the three-step analysis articulated by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-26, 36 L.Ed.2d 668 (1973). See Albertson v. FMC Corp., 437 N.W.2d 113, 115 (Minn.Ct.App. 1989) (disparate treatment); Paper v. Rent-A-Wreck, 463 N.W.2d 298, 299-300 (Minn.Ct. App.1990) (disparate impact).[4] Under this three-step analysis, a plaintiff must first establish a prima facie case of discrimination. If the plaintiff successfully establishes a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant does articulate a nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to prove that this justification is merely a pretext. Id. at 804, 93 S.Ct. at 1825. The plaintiff retains the burden of persuasion at all times and must convince the trier of fact by a preponderance of the evidence that he was the victim of discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254-56, 101 S.Ct. 1089, 1094-95, 67 L.Ed.2d 207 (1981).
As a preliminary matter, the Court must first determine whether it will consider the affidavit of Ross Azevedo, which was submitted with Hermeling's responsive memorandum. "The choice of materials to be considered in conjunction with a summary judgment motion is within the discretion of the court." Schibursky v. International Business Machs., 820 F.Supp. 1169, 1175 (D.Minn.1993). In his affidavit, Azevedo compares a "stratified sample" of Montgomery Ward's employees to a "stratified sample" of former employees who were laid off by Montgomery Ward, and makes the following conclusion:
The older a worker is the more likely he or she is to be laid off. The younger a worker is the less likely he or she is to be laid off. This constitutes statistical evidence that there was a pattern of age discrimination in the layoffs conducted by Montgomery Wards [sic] during this period.
(Azevedo Aff. at 6.) Montgomery Ward argues that this affidavit should not be considered because Hermeling failed to disclose Azevedo as an expert witness prior to the October 1, 1993 stipulated deadline and because Azevedo's conclusions are unrelated to the disputed issues in this case. The Court agrees.
Hermeling's counsel failed to disclose Azevedo as an expert witness until October 12, 1993, four days after Montgomery Ward served its summary judgment papers, eleven days after the stipulated deadline for expert witness disclosure, and three and one-half months after the scheduled deadline for expert disclosure. The factual basis for and the nature of Azevedo's opinions were not disclosed until Hermeling's counsel filed their memorandum in response to this motion. Although Azevedo's opinions are presumably based, at least in part, on the additional discovery ordered by the magistrate judge, the submission of this affidavit appears to be little more than an eleventh-hour attempt to *1376 bolster Hermeling's lawsuit with a new legal theory and statistical evidence. Cf. Bizzle v. McKesson Corp., 961 F.2d 719, 722 (8th Cir. 1992) (change in counsel and trial strategy did not excuse untimely expert disclosure). Furthermore, Hermeling's counsel's untimely disclosure has unfairly prejudiced Montgomery Ward in its preparation for this motion by effectively precluding any type of formal rebuttal. See Tallarico v. Trans World Airlines, Inc., 881 F.2d 566, 572 (8th Cir.1989). Under these circumstances, the Court finds it appropriate to exclude Azevedo's testimony. See, e.g., Bizzle, 961 F.2d at 722; Harris v. Steelweld Equip. Co., 869 F.2d 396, 399 (8th Cir.), cert. denied, 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989).
Even if Azevedo had been timely disclosed as an expert, the Court would still have serious concerns about the probative value of his affidavit. Azevedo bases his analysis on a comparison between a "stratified sample" of Montgomery Ward's employees and a "stratified sample" of former employees who were laid off by Montgomery Ward. Azevedo fails to supply any time frame for these samples or to explain how he generated these samples.[5] Likewise, Azevedo fails to explain why his analysis of all former employees laid off by Montgomery Ward is relevant to this lawsuit, which involves the elimination of four season group merchandisers through a reduction-in-force. See, e.g., Holley v. Sanyo Mfg., Inc., 771 F.2d 1161, 1167 (8th Cir.1985) (stating that "[t]he crucial statistical questions ... must focus on the effect of the reduction-in-force: do the statistics show that the layoffs and firings discriminated against older workers?");[6]Sigurdson v. Carl Bolander & Sons, Co., 511 N.W.2d 482, 489 (Minn.Ct.App.1994) (rejecting statistics that lacked any explanation of their significance); Albertson, 437 N.W.2d at 117 (criticizing "the mere recitation of statistics, without some evidence tending to show that they indicate a meaningful phenomenon"). Finally, the Court notes that Hermeling's responsive memorandum sets forth a large amount of statistical data that is not contained in Azevedo's affidavit. Although some of this raw data is presumably summarized in the line-graph attached to Azevedo's affidavit, other data, such as that regarding Montgomery Ward's hiring practices, is not included in any affidavit. Because of these deficiencies and counsel's untimely disclosure, Azevedo's affidavit will not be considered in the resolution of this motion.

1. Disparate Treatment

Normally, to establish a prima facie case of disparate treatment age discrimination under the Minnesota Human Rights Act, a plaintiff must establish (1) that he was a member of the protected class, (2) that he was qualified for the position from which he was discharged, (3) that he was discharged, and (4) that the employer assigned a nonmember of the protected class to do the same work. Elliott v. Montgomery Ward & Co., 967 F.2d 1258, 1260 (8th Cir.1992); Feges v. Perkins Restaurants, Inc., 483 N.W.2d 701, 711 (Minn.1992). However, when the plaintiff's discharge takes place in the context of a reduction-in-force, the fourth element is modified because the plaintiff's position will normally not be filled due to the nature of a *1377 reduction-in-force. Instead, the former employee's duties will be redistributed to other employees. Therefore, to establish a prima facie case of age discrimination in a reduction-in-force termination, a plaintiff is also required to make "some additional showing" that age was a factor in the employer's decision to eliminate his position. Kypke v. Burlington N.R.R. Co., 928 F.2d 285, 286 (8th Cir.1991); Holley v. Sanyo Mfg., Inc., 771 F.2d 1161, 1165 (8th Cir.1985).[7]
Initially, Hermeling argues that this case does not involve a true reduction-in-force because the four seasons group merchandiser position varies from store to store and was not eliminated at two other stores in the Twin Cities metropolitan area. This argument is without merit. Pursuant to the recommendations of its store operations expense control department, Montgomery Ward eliminated ninety-nine of the one-hundred-and-two national four seasons group merchandiser positions in less than eight months. This action easily qualifies as a reduction-in-force. See Barnes v. GenCorp. Inc., 896 F.2d 1457, 1465 (6th Cir.), cert. denied, 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990).
Montgomery Ward does not dispute that Hermeling was a member of a protected class due to his age or that he was qualified for the four seasons group merchandiser position. The Court assumes, for the purposes of this motion, that Hermeling was terminated from his position.[8] Therefore, to establish his prima facie case of age discrimination, Hermeling must make "some additional showing" from which a fact-finder could infer that age was a factor in Montgomery Ward's decision to eliminate his position. This additional showing could take "many forms" and will often be made with statistical or circumstantial evidence. Holley, 771 F.2d at 1166.
Hermeling offers a variety of evidence in support of the necessary additional showing. In his affidavit, Hermeling states that, while he was working at the Roseville store, the store manager, William Marcinkus, repeatedly made derogatory comments about older people and employees. (Hermeling Aff. ¶ 2) In his deposition, Hermeling testified that Marcinkus once told him to fire his two oldest commissioned sales associates and replace them with younger employees. (Hermeling Dep. at 118.) Hermeling also claims that, after he was fired, he was replaced by Skiba, a twenty-one-year-old woman who was hired shortly before his position was eliminated and paid substantially less money.
Hermeling has also submitted affidavits from Larry Broesder and Wayne Mickelson, former Montgomery Ward employees at the Roseville store. Larry Broesder, the former store manager, states that, in 1989, he was instructed to downgrade Hermeling's performance evaluations by Reed Vanderzee, the St. Paul area manager. (10/25/93 Broesder Aff. ¶ 4.) Broesder also recalls that, "[d]uring the time that [he] was working with Montgomery Ward," he heard someone say that "if you could reduce the average age of the workforce you would have large savings in benefit [sic] cost." (Id.) Wayne Mickelson, a former group merchandiser, states that he heard Montgomery Ward managers make many derogatory comments about older people. (Mickelson Aff. ¶ 6.) Mickelson also asserts that, at some time during the last three years, he attended a regional meeting at which an unidentified vice president said that they "would have to meet the challenge or [they] would be replaced by `younger' people." (Id. at ¶¶ 4-5.)
*1378 Robert Schmidt and David Whiteside have also testified by affidavit in support of Hermeling's claims. Schmidt, a former assistant store manager at Montgomery Ward's Robbinsdale and St. Paul stores, says that in 1991 Ken Mazur, a "regional director," made disparaging comments about older workers and said that Montgomery Ward was "looking for younger, more contemporary people as store managers." (Schmidt Aff. ¶ 5.) Schmidt also states that in 1988, while he was working in the St. Paul store, Dale Offenberger, the store manager, told him that he (Offenberger) was directed to manipulate the four seasons group merchandiser's evaluations to "get rid" of him. (Id. at ¶ 8.) David Whiteside, the former store manager of Montgomery Ward's Duluth store, claims that his performance evaluations were unfairly lowered in August of 1989. (Whiteside Aff. ¶¶ 2-3.) Whiteside also says that he was commonly ordered to downgrade evaluations, and he concludes that this pattern "clearly demonstrated an attempt to target older employees." (Id. at ¶¶ 8, 10.) Whiteside further states that he was told by Bill Anderson, a "district manager," that it was "the corporate objective to get rid of older workers." (Id. at ¶ 11.)
The Court finds that this evidence clearly suggests a discriminatory attitude towards older employees on the part of various Montgomery Ward employees, including William Marcinkus, Hermeling's immediate supervisor. However, "[n]ot all comments that reflect a discriminatory attitude will support an inference that an illegitimate criterion was a motivating factor in an employment decision." Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir.1993). Courts must distinguish between "[c]omments which demonstrate a `discriminatory animus in the decisional process' or those uttered by individuals closely involved in employment decisions" and "`stray remarks in the workplace,' `statements by nondecisionmakers,' or `statements by decisionmakers unrelated to the decisional process.'" Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir.1991) (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 277-78, 109 S.Ct. 1775, 1804-06, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring)). "[A]ctions and comments by employees not involved in a discharge decision cannot provide a basis for charging other employees with discrimination." Jardien v. Winston Network, Inc., 888 F.2d 1151, 1155 (7th Cir. 1989); see also, Frieze v. Boatmen's Bank of Belton, 950 F.2d 538, 540 (8th Cir.1991); Fortino v. Quasar Co., 950 F.2d 389, 395 (7th Cir.1991); Guthrie v. Tifco Indus., 941 F.2d 374, 379 (5th Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992); Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 10 (1st Cir.1990).
Senior management at Montgomery Ward's corporate headquarters in Chicago decided that store expenses needed to be cut in late December of 1990 or early January of 1991. In January of 1991, William Bass made a series of recommendations to senior management that included the nationwide elimination of the four seasons group merchandiser position. These recommendations were approved by Dick Bergal, the president of store operations. By January 21, 1991, eighty-five of one-hundred-and-two four seasons group merchandiser positions were eliminated. During the following summer, senior management decided that additional cuts were needed. Consequently, fourteen of the remaining seventeen four seasons group merchandiser positions were eliminated. During both rounds of cuts, territory operations managers could retain individual positions by requesting exceptions based upon the needs of their operations. However, area managers, human resource managers, and store managers had no authority to change the decision that a particular position was being eliminated.
When considered in this context, the evidence put forward by Hermeling does not suggest that age was a factor in Montgomery Ward's decision to initiate the reduction-in-force. Nor does it suggest that age was a factor in the manner in which the reduction-in-force was implemented. Hermeling has offered no evidence suggesting that the reduction-in-force was initiated for any reason other than to lower store costs. Discriminatory statements attributed to William Marcinkus, Ken Mazur, Bill Anderson, and other unnamed individuals simply have no bearing on why William Bass, Dick Bergal, and others in Montgomery Ward's corporate management decided to eliminate ninety-nine of the one-hundred-and-two nationwide four *1379 seasons group merchandiser positions.[9] Hermeling has also offered no evidence suggesting that any of these individuals had any contact with Doug Rau, the east territory operations manager, or any influence on Rau's decision not to request an exception for Hermeling's position during the second round of cuts in July and August.
Similarly, the evidence regarding the down-grading of Hermeling's and other employees' performance evaluations has no probative value because Hermeling has offered no evidence suggesting that performance evaluations were used in any way to implement the reduction-in-force. Furthermore, Montgomery Ward has filed a second affidavit from Larry Broesder, in which Broesder states that "[a]lmost everyone's rating went down" due to increased performance expectations and that age was not taken into account when making these evaluations. (12/30/93 Broesder Aff. ¶ 8.)
Hermeling's claim that he was replaced by Skiba is not supported by the record and fails to raise an inference of discrimination. The record reflects that Skiba, in her position as soft home manager, had responsibility for several departments that had previously been part of Hermeling's four seasons group. (Hintz Aff. Ex. A at 11; 1/21/94 Skiba Aff. ¶ 4.) The very nature of a reduction-in-force requires that responsibilities previously held by the discharged employees be absorbed by other members of the workforce. Barnes, 896 F.2d at 1465. This process does not support an inference of discrimination. See Frieze, 950 F.2d at 540-41; Feges v. Perkins Restaurants, Inc., 465 N.W.2d 75, 80 (Minn. Ct.App.1991), rev'd in part on other grounds, 483 N.W.2d 701 (Minn.1992); Albertson, 437 N.W.2d at 116.
The fact that Hermeling was not offered Skiba's position or another management position also fails to raise an inference of discrimination. Hermeling has not introduced any evidence suggesting that other discharged four seasons group managers were offered similar positions or that he was entitled to Skiba's position under company policy. Likewise, Hermeling has introduced no evidence suggesting that he was qualified for any other management position or that there were any management positions open at the time his position was eliminated.
The Court finds that Hermeling has failed to offer any evidence suggesting that his age was a factor in Montgomery Ward's decision to eliminate his position. Without this additional showing, Hermeling cannot make out a prima facie case of age discrimination, and his disparate treatment claim fails as a matter of law. Therefore, Montgomery Ward is entitled to summary judgment on Hermeling's disparate treatment claim.[10]
*1380 The Court further finds that, even if Hermeling was able to establish a prima facie case of discrimination, the reduction-in-force was a legitimate, nondiscriminatory reason for eliminating Hermeling's position. Therefore, under the McDonnell Douglas analysis, the burden shifts back to Hermeling to prove that this justification is merely a pretext. As previously explained, Hermeling has not introduced any evidence from which this Court can infer that age was a factor in the initiation or implementation of the reduction-in-force. Therefore, Montgomery Ward would be entitled to summary judgment even if Hermeling had made out a prima facie case.

2. Disparate Impact

In support of his disparate impact claim, Hermeling offers Ross Azevedo's statistical analysis. As previously explained, however, this evidence will not be considered in the resolution of this motion because it was disclosed in an untimely fashion and does not directly relate to the reduction-in-force at issue in this case. Without any statistical evidence, Hermeling is unable to establish a prima facie case of disparate impact, and this claim fails as a matter of law. See Sigurdson v. Carl Bolander & Sons, Co., 511 N.W.2d 482, 489 (Minn.Ct.App.1994). Therefore, Montgomery Ward is entitled to summary judgment on Hermeling's disparate impact claim.

C. Disability Discrimination
In Count 2, Hermeling alleges that Montgomery Ward discriminated against him on the basis of his disability. This claim is also brought under the Minnesota Human Rights Act, which makes it unlawful for an employer to discharge an employee because of a disability. Minn.Stat. § 363.03, subd. 1(2)(b). In the absence of direct evidence, Hermeling's disability discrimination claim is also analyzed under the three-step McDonnell Douglas analysis. See Sigurdson, 511 N.W.2d at 486.
To make out a prima facie claim of disability discrimination, Hermeling must demonstrate (1) that he was a member of a protected class, (2) that he was qualified for the position he held, (3) that he was discharged from this position, despite his qualifications, and (4) after his discharge, Montgomery Ward assigned a non-member of the protected class to do the same work. Lindgren v. Harmon Glass Co., 489 N.W.2d 804, 808 (Minn.Ct.App.1992); Miller v. Centennial State Bank, 472 N.W.2d 349, 352 (Minn.Ct. App.1991). Because Hermeling's discharge took place in the context of a reduction-in-force, he must also make some additional showing that his disability was a factor in Montgomery Ward's decision to eliminate his position. Holley, 771 F.2d at 1165; Johnson v. Minnesota Historical Soc'y, 931 F.2d 1239, 1243 (8th Cir.1991) (applying Holley to age and disability discrimination claims).
The Court assumes, for the purposes of this motion, that Hermeling's cluster headaches and blood condition, singularly or collectively, constituted a disability under the Minnesota Human Rights Act. See Minn. Stat. § 363.01, subd. 13 (defining "disability"); State by Cooper v. Hennepin County, 441 N.W.2d 106, 110-13 (Minn.1989) (construing the statutory definition of "disability"). Nonetheless, Hermeling's disability discrimination claim fails for the same reasons as his age discrimination claim.
In his own affidavit, Hermeling states that William Marcinkus "made numerous comments about this [blood] disorder and harassed [him] about [his] doctor and the medical treatment that [he] was getting." (Hermeling Aff. ¶ 9.) Similarly, Wayne Mickelson states in his affidavit that Marcinkus made "derogatory remarks to [him] about Mr. Hermeling's illness, particularly when Mr. Hermeling had to lie down during the work day." (Mickelson Aff. ¶ 8.) This evidence suffers from the same deficiency as the discriminatory comments regarding older employees. There is nothing in the record suggesting that William Marcinkus had any influence regarding Montgomery Ward's decision to initiate the reduction-in-force or the manner in which the reduction-in-force was implemented. Moreover, the record reflects that Hermeling had his last attack of cluster headaches in approximately July of 1989, eighteen months before Montgomery Ward initiated the reduction-in-force. Hermeling *1381 first sought treatment for his blood condition in May of 1991, four months after Montgomery Ward initiated the reduction-in-force.
The Court finds that Hermeling has not established a prima facie case of disability discrimination. Alternatively, the Court finds that Montgomery Ward has established that the reduction-in-force was a legitimate, nondiscriminatory reason for the elimination of Hermeling's position. Hermeling has not introduced any evidence suggesting that the reduction-in-force was merely a pretext for discrimination. Therefore, Hermeling's disability discrimination claim fails as a matter of law.

D. Negligent Supervision and Failure to Train
In Counts 3 and 4, Hermeling alleges that Montgomery Ward negligently supervised and negligently failed to train its employees and that this negligence resulted in discrimination against him on the basis of his age and disability.[11] Because Hermeling has failed to make out a prima facie case of either age or disability discrimination, Montgomery Ward is entitled to summary judgment on the negligence claims as well.
Minnesota courts have analyzed claims for negligent supervision under both the Restatement (Second) of Agency § 213 and the Restatement (Second) of Torts § 317. See Semrad v. Edina Realty, Inc., 493 N.W.2d 528, 533-34 (Minn.1992) ("Semrad II"). However, as this Court has previously stated, Minnesota "courts have not yet defined the parameters of the duty or the type of claims arising out of the negligent supervision of an employee." Schibursky v. International Business Machs., 820 F.Supp. 1169, 1186 (D.Minn.1993). Claims for negligent supervision "derive[] from the respondent superior doctrine, which relies on connection to the employer's premises or chattels." Yunker v. Honeywell, Inc., 496 N.W.2d 419, 422 (Minn.Ct.App.1993). In contrast, claims for negligent hiring or negligent retention "are based on direct, not vicarious liability." Id.
The duty imposed under § 317 of the Restatement (Second) of Torts is "unambiguously limit[ed] ... to a duty to prevent an employee from inflicting personal injury upon a third person on the master's premises." Semrad II, 493 N.W.2d at 534. Since Hermeling has offered no evidence of personal injury, he has no claim for negligent supervision under the Restatement of Torts. Id.
Section 213 of the Restatement (Second) of Agency provides that "[a] person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless." The duty under § 213 is based on the agency relationship between employer and employee, and is limited to the employer's activities that are conducted through its employees. Semrad v. Edina Realty, Inc., 470 N.W.2d 135, 146 (Minn.Ct.App.1991) ("Semrad I"), rev'd in part on other grounds, 493 N.W.2d 528 (Minn.1992). "These are, of course, acts in the scope of employment." Id. "[S]ection 213 liability has effectively become part of respondent superior liability in Minnesota." Id.
At oral argument, Hermeling's counsel acknowledged that he was not aware of any decision from a Minnesota court in which a cause of action for negligent supervision was applied to a claim for discriminatory discharge. The Court's search for such a decision has been equally unproductive. However, even if the Court assumes that the duty under § 213 applies to this type of situation, Hermeling has still failed to offer any evidence suggesting that the duty was breached. Therefore, these claims fail as a matter of law.

*1382 E. Breach of Contract
In Count 5, Hermeling alleges that Montgomery Ward had, and breached, a contractual obligation to protect him from discriminatory treatment in the workplace. In support of this claim, Hermeling relies on a nondiscrimination provision in the Montgomery Ward employee manual, which he claims created an enforceable employment contract. The Eighth Circuit has previously held that this "nondiscrimination provision of the manual is nothing more than a general policy statement, and thus, is insufficient to give rise to a unilateral employment contract." Elliott v. Montgomery Ward, 967 F.2d 1258, 1263 (8th Cir.1992) (citing Pine River State Bank v. Mettille, 333 N.W.2d 622, 626 (Minn. 1983)). Therefore, Hermeling's breach of contract claim fails as a matter of law.
Accordingly, based upon a review of all the files, records, and proceedings herein,
IT IS HEREBY ORDERED That Montgomery Ward & Co., Incorporated's motion for summary judgment is GRANTED; and
IT IS FURTHER ORDERED That the clerk shall enter judgment as follows:
IT IS ORDERED, ADJUDGED, AND DECREED that plaintiff take nothing against the defendant Montgomery Ward & Co., Incorporated, and this action is dismissed with prejudice, defendant Montgomery Ward & Co., Incorporated to have its costs and disbursements as taxed and allowed.
NOTES
[1] Although Hermeling's age is not set forth in any of the affidavits, Montgomery Ward does not dispute that he is a member of a protected class due to his age.
[2] Due to the unavailability of hearing dates before this Court, a stipulation and order was entered extending the dispositive motion deadline to November 15. In light of the additional discovery ordered by the magistrate judge, the hearing was then continued to January 28, 1994.
[3] This district's local rules also contain page limits and deadlines for submitting responsive memoranda, which the Court calls to Hermeling's counsel's attention. See D.Minn.L.R. 7.1(b), (c).
[4] Neither party has suggested that this case involves direct proof of discriminatory intent, which would make the McDonnell Douglas analysis unnecessary. See Feges v. Perkins Restaurants, Inc., 483 N.W.2d 701, 710 n. 4 (Minn. 1992); State by Cooper v. Hennepin County, 441 N.W.2d 106, 110 n. 1 (Minn.1989).
[5] Hermeling's responsive memorandum describes these samples as "random" and states that they were drawn from employees who worked for Montgomery Ward in 1990. (Pl.'s Resp.Mem. at 23.) None of this information is set forth in Azevedo's affidavit. Kathryn Cima, one of Hermeling's attorneys, states in her affidavit that a random sample was created for analyzing the data on hires. (Cima Aff. ¶ 13.) The data on hires, however, is not discussed in Azevedo's affidavit. Azevedo's affidavit compares a sample drawn from the entire Montgomery Ward workforce with a sample of former employees that were laid off. With regard to these two samples, Cima only states that "a sample of these names were used in the statistical study." (Id. at ¶ 14.) No explanation is given for how these samples were created.
[6] The Court recognizes that Holley involved an age discrimination claim brought under the federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 (the "ADEA"). However, in considering discrimination claims brought under the Minnesota Human Rights Act, Minnesota courts have followed the standards established by federal courts in applying federal discrimination statutes. See Kypke v. Burlington N.R.R., Co., 928 F.2d 285, 286 (8th Cir.1991) (citing Sigurdson v. Isanti County, 386 N.W.2d 715, 719-20 (Minn.1986)); Schibursky, 820 F.Supp. at 1178 (citing Hubbard, 330 N.W.2d at 442)). Therefore, the Court will not distinguish between cases interpreting the ADEA or the Minnesota Human Rights Act unless that distinction is otherwise relevant.
[7] The Court recognizes that Minnesota courts have yet to apply Holley in a reported decision to a reduction-in-force case brought under the Minnesota Human Rights Act. See Elliott, 967 F.2d at 1261 n. 2. As the Eighth Circuit explained in Elliott, however, that court's previous application of Holley to a case brought under the Minnesota Human Rights Act binds this Court by the principles of stare decisis. Id. at 1261. Moreover, in this case, although Hermeling disputes the existence of a reduction-in-force, he concedes that this "additional showing" under Holley is required in reduction-in-force cases. (Pl.'s Resp.Mem. at 13.)
[8] Montgomery Ward argues that Hermeling was not discharged because he was offered another position with equal or greater earning potential. The Court rejects this argument. Hermeling was offered a position as a commissioned sales associate. Although Hermeling may have been able to earn a salary in that position equivalent to or greater than in his previous position, this fact is not determinative of whether he suffered an adverse employment decision. See Adams v. West Publishing Co., 812 F.Supp. 925, 930 (D.Minn. 1993).
[9] The conversation described by Robert Schmidt, in which a store manager told him that he was directed to manipulate the four seasons group merchandiser's evaluations to "get rid" of him, took place in 1988. That statement has no bearing on why Montgomery Ward decided to implement this reduction-in-force three years later in 1992.
[10] Recent Eighth Circuit decisions involving age discrimination claims in the context of reductions-in-force illustrate the shortcomings of Hermeling's claim. The court held in Gaworski v. ITT Commercial Fin. Corp., 17 F.3d 1104, 1109 (8th Cir.1994), that the plaintiff had established a prima facie case with evidence challenging the authenticity of the purported reduction-in-force and suggesting that it was not objectively carried out. In Kehoe v. Anheuser-Busch, Inc., 995 F.2d 117, 119 (8th Cir.1993), the court held that the plaintiff had established a prima facie case with evidence suggesting that the individual who recommended the reduction in force also made discriminatory remarks about older employees. The plaintiff in Kehoe also introduced evidence suggesting that he was treated differently from other similarly situated employees in that he was not offered the opportunity to transfer and that this treatment violated the defendant's company policy. Id. at 119-20. Similarly, in Glover v. McDonnell Douglas Corp., 981 F.2d 388, 393 (8th Cir.1992), vacated, ___ U.S. ___, 114 S.Ct. 42, 126 L.Ed.2d 13 (1993) (for reconsideration of issue of willfulness in light of Hazen Paper Co. v. Biggins, ___ U.S. ___, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)), the Eighth Circuit held that the plaintiff had established a prima facie case with evidence suggesting that the criteria used for implementing the reduction-in-force were not followed and that he had been denied the opportunity to transfer because of his age. In Elliott v. Montgomery Ward & Co., 967 F.2d 1258, 1262 (8th Cir.1992), the plaintiff established a prima facie case with evidence regarding a discriminatory statement made by her manager in the context of implementing the reduction-in-force. In each of these cases, the plaintiff offered evidence suggesting that the reduction-in-force, or the process through which it was implemented, was tainted by a discriminatory animus. In contrast, Hermeling has offered nothing in this case from which the Court can infer that his age was a factor in Montgomery Ward's decision to eliminate his position.
[11] Hermeling has not cited, nor has the Court been able to find, any decision from a Minnesota court recognizing negligent "failure to train" as a distinct cause of action outside of municipal liability under 42 U.S.C. § 1983. See City of Canton, Ohio v. Harris, 489 U.S. 378, 387, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). Hermeling also concedes in his memorandum that his negligent supervision and negligent training claims focus on the same conduct. (Pl.'s Resp. Mem. at 33.) The one case Hermeling cites in support of his failure to train claim simply describes the "central policy behind vicarious liability" as "induc[ing] supervisory employees to carefully train, supervise, and discipline their employees." City of Minneapolis v. Richardson, 307 Minn. 80, 239 N.W.2d 197, 205 (1976). Therefore, the Court will consider Counts 3 and 4 together.