IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

JACKSON V. POUR

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STEPHEN B. JACKSON, APPELLANT,

V.

ADI POUR, DIRECTOR OF DOUGLAS COUNTY HEALTH DEPARTMENT, AND COUNTY OF
DOUGLAS COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLEES.

Filed February 25, 2020.    No. A-19-387.

Appeal from the District Court for Douglas County: HORACIO J. WHEELOCK, Judge.
Affirmed.

Darnetta L. Hunter for appellant.

Sandra Connolly and Cortney M. Wiresinger, Deputy Douglas County Attorneys, and
Blake Karlin, Senior Certified Law Student, for appellees.

MOORE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Stephen Jackson filed a complaint against Douglas County and Dr. Adi Pour, Director of
Douglas County Health Department (DCHD) alleging that he was wrongfully discriminated
against in not being promoted to a managerial position within DCHD. The Douglas County District
Court granted summary judgment in favor of Dr. Pour and Douglas County (collectively referred
to as "Douglas County") and Jackson has appealed. Because we determined that Douglas County
was entitled to judgment as a matter of law, we affirm.

## II. STATEMENT OF FACTS

Jackson filed a complaint, which he later amended, to allege three causes of action: (1) discrimination under the Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev. Stat. §§ 48-1101 to 48-1125 (Reissue 2010 & Cum. Supp. 2018); (2) discrimination under 42 U.S.C. § 2000(e), Title VII of the Civil Rights Act; and (3) discrimination under Neb. Rev. Stat. § 20-148 (Reissue 2012). Douglas County filed a motion for summary judgment and a hearing was held thereon. At the hearing, the court received certain exhibits without objection.

In its March 2019, order, the district court summarized the evidence submitted during the summary judgment hearing. We quote from the district court's order at length and for which we find support in the summary judgment record:

Plaintiff [Jackson] is an African-American male and is an employee of Defendant Douglas County at [DCHD] as a Health Promotions Supervisor. He has worked in that position since 2010. [Douglas County] is a political subdivision of the State of Nebraska. [Dr. Pour] is an employee of Douglas County since 2002, and [has] served as Director of the DCHD since 2002. Defendants will be collectively referred to as "Douglas County." Jackson testified there is one other African-American employee in management at DCHD, Dr. Larry Figgs, who was an external hire for a division chief position.

In October 2015, Jackson was informed that the position of Chief of Community Health Nutrition Services ("Subject Position") would be open and a national search would be conducted for the position. Jackson learned this information from the outgoing chief of that division, Mary Balluff, who told Jackson and another supervisor during a meeting that there would be a national search for her replacement. It was practice to post upper level positions, such as division chief, nationally, in order to ensure the best possible candidates. Dr. Pour ultimately had the authority to determine whether to hire internally or to open positions publically or nationally. Jackson stated that in his experience, the division seldom conducted internal searches in his division.

Douglas County Human Resources posted the Subject Position on October 14, 2015. Essential functions of the Subject Position included public health experience, developing community health needs, securing and managing grant funding, assisting with preparing the annual department budget, and performing supervisory functions. There were approximately forty-two applicants for the Subject Position. Four applicants were offered in-person interviews. Dr. Pour requested Timothy Kelso ("Kelso"), the Chief of Administration and Finance at DCHD[,] assist her in conducting interviews for the Subject Position; he was involved in all interviews of applicants.

Applicant Kerry Kernan ("Kernan") applied for the Subject Position on October 17, 2015. At the time of her application, Kernan was licensed as a registered nurse and had a Master's in Public Administration and Master's of Science in Nursing. Prior to her application, she had worked in the public health sector since 1999, approximately fifteen years. At the time she applied, Kernan worked at Lutheran Family Services as a Regional Administrator of Behavior Health Services and Chief Operation Officer of Health 360 Integrated Clinic. In three separate public health positions, Kernan oversaw grants and/or contracts totaling $720,000 to $1.4 million per year; the latter included monitoring the

budget for the [program]. In the course of one public health position, Kernan supervised 75 employees; in another, she supervised 52 employees. Kernan had experience in the process of accrediting a local health department, as well as with an Emergency Preparedness Program and integrating mental health into health care.

Jackson applied for the Subject Position on November 11, 2015. At the time Jackson applied for the Subject Position, he had a Master's in Public Health and a Bachelor's in Chemistry. Jackson had approximately 11 years of professional experience in the public health sector. Jackson has worked as Supervisor of the Health Promotion Section of DCHD since 2010. In the course of his three public health positions, Jackson has supervised approximately 11 employees; Jackson oversaw 8 employees in his supervisor role at DCHD. Jackson also has grant experience, and identified several grants in his interview with Dr. Pour and Kelso; these grants varied in amount, the highest of which was $98,000. Similarly, Jackson stated he monitored a budget of $600,000.

The interview consisted of Dr. Pour and Kelso asking candidates questions from an interview questionnaire. There were two components to the interview materials for the Subject Position; the actual questions asked by Dr. Pour and Kelso and the grading scale. The interview questions were submitted to human resources for review and approval; the grading scale was not. Dr. Pour determined the grading scale for all applicants that interviewed, and the same interview questions and scoring system were utilized for the applicants that advanced to in-person interviews.

Kernan's first interview at DCHD took place on November 5, 2015. Kernan's total points earned on her interview questionnaire were 98 out of a possible 115 from Dr. Pour and 91 out of 115 from Kelso. Per Dr. Pour, after Kernan left, Dr. Pour and Kelso determined at that time to ask Kernan for a second interview. Kernan's second interview was scheduled to take place on November 24, 2015.

Dr. Pour and Kelso interviewed Jackson on November 23, 2015, the day prior to Kernan's second interview. Jackson testified that Dr. Pour's first question for Jackson at his interview for the Subject Position was, "Did anyone see you?" Jackson testified that he did not initially consider Dr. Pour's alleged statement to be biased against him, but thought it was a strange question. Jackson stated that after he recovered from the first question, he thought the interview went well. Jackson's total points earned on his interview questionnaire were 85 out of a possible 115 from Dr. Pour and 71 out of 115 from Kelso.

Kelso testified that at the end of the first round interviews, there was only one candidate that they wanted to do a second interview with, which was Kernan. Douglas County offered Kernan the Subject Position on or around November 30, 2015. On November 30, Dr. Pour met with Jackson to inform him that he was not selected for the Subject Position. Dr. Pour told Jackson two reasons that he was not selected: Jackson did not talk about the Affordable Care Act and that his vision was too small for the division. Jackson testified that Dr. Pour did not indicate that those were the only two reasons, but those were the only two reasons she provided.

(Citations omitted.)

In addition to this outline of facts by the district court, we summarize portions of exhibits offered by Jackson in opposition to the Douglas County's motion for summary judgment. Jackson offered the affidavit of Khari Muhammad. Muhammad attested that she was employed by DCHD from 2006 to 2008 and 2010 to 2018 as a medical case manager, risk assessor inspector, and program coordinator, all of which she described as lateral moves within DCHD. Muhammad stated that, when she applied for a managerial position within DCHD, she was the only viable candidate that had applied for the posted position. However, after her application was forwarded to the hiring manager, Muhammad claimed that rather than being granted an interview, she was advised to reapply for the position due to the position being reposted. Muhammad also described that she and a few of her colleagues had concerns related to Kelso and issued a letter to Dr. Pour in April 2017 outlining their concerns, a copy of which was attached to Muhammad's affidavit. Muhammad also documented filing a complaint against DCHD in December 2017 with the Equal Employment Opportunity Commission based upon discrimination due to hiring practices. She testified that she no longer works for DCHD and feels that she was forced to resign, and was surprised that Jackson, who she considered well-qualified for the subject position was not hired.

Jackson also offered the affidavit of Shavonna Lausterer. Lausterer attested that she was employed by DCHD for 7½ years and last served as public health emergency response coordinator and also served as a union representative negotiator committee chair. Lausterer attested that she observed that although Kelso was subject to multiple disciplinary complaints, he would "receive more managerial responsibility when it appeared" that he was not the most qualified. For example, Kelso was placed in charge of the "LEAD program despite him not having any childhood lead prevention background experience" and he was placed "in a position of Environmental Health Division Chief despite appearing not to have [a] background in that area." Lausterer attested there was an unwritten rule made with the approval of Dr. Pour that Kelso "could pretty much do whatever he wanted to do." Lausterer attested that some positions were posted internally and others externally without consistency. For instance, she explained Kelso hired a nonminority individual as retail food supervisor without posting the position externally. She opined that Kelso's "demeanor and/or reaction to certain work events would rub many employees the wrong way," yet his input with regard to hiring and promotion was weighted heavily. Lausterer attested she left and became health director for Sarpy and Cass County and was presently health director of Lincoln, Lancaster County. She testified she left because there were no advancement opportunities in the position she was in.

Following the hearing, and after reviewing all the evidence, the district court held that Jackson failed to produce evidence that would support an inference of discrimination in reasonable minds to support his claim that Douglas County's proffered reason was pretext for racially motivated discrimination. Accordingly, the district court granted Douglas County's motion for summary judgment. Jackson now appeals.

## III. ASSIGNMENTS OF ERROR

Jackson assigns that the district court erred in (1) ruling that the record revealed no evidence of direct discrimination as it relates to his claims, (2) ruling the record revealed no evidence to meet the three-point *McDonnell Douglas Corp.* threshold as it relates to his claims, and (3) deciding factual issues at the summary judgment stage of the proceedings.

## IV. STANDARD OF REVIEW

An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Williamson v. Bellevue Med. Ctr.*, 304 Neb. 312, 934 N.W.2d 186 (2019). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## V. ANALYSIS

Jackson's claim is one of disparate treatment--a claim based upon an employer's treatment of some people less favorably than others because of their race, color, religion, sex, or other protected characteristics. The framework for our analysis here was thoroughly outlined by the Nebraska Supreme Court in *Hartley v. Metropolitan Util. Dist.*, 294 Neb. 870, 891-92, 885 N.W.2d 675, 692-93 (2016):

> The NFEPA states at § 48-1101 that it "is the policy of [Nebraska] to foster the employment of all employable persons in the state on the basis of merit . . . and to safeguard their right to obtain and hold employment without discrimination." The NFEPA provides at § 48-1104(1), in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, disability, marital status, or national origin[.]" The NFEPA is patterned from that part of the Civil Rights Act of 1964 contained in 42 U.S.C. § 2000e et seq. (2012), and it is appropriate to look to federal court decisions construing similar and parent federal legislation. In intentional discrimination cases[,] liability depends on whether the protected trait actually motivated the employer's decision and had a determinative influence on the outcome.
>
> . . . The three-part burden-shifting framework from *McDonnell Douglas Corp. v. Green*[, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973),] is not the exclusive method of proving disparate treatment, but neither party in this appeal contests that *McDonnell Douglas Corp.* frames our analysis of the sufficiency of the evidence to support the jury's verdict.

Unlike *Hartley*, in addition to the *McDonnell Douglas Corp.* framework, Jackson separately asserted, in opposition to Douglas County's motion for summary judgment that Jackson proffered facts which would support a finding of direct discrimination. The framework for a claim of direct discrimination was explained by the Eighth Circuit Court of Appeals in *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 775-76 (8th Cir. 1995):

> There is, however, more than one method by which an employment-discrimination plaintiff can attempt to demonstrate intentional discrimination to the finder of fact. First and foremost, such a plaintiff may allege that there is direct evidence that the employer discriminated against the employee on the basis of a prohibited characteristic. In such a case, the plaintiff need not resort to alternative methods of proof but may instead choose

to rely solely on the purported direct evidence to support the claim of intentional discrimination.

In recognition of the fact that explicit, inculpatory evidence of discriminatory intent is rare, see *Gaworski v. ITT Commercial Finance Corp.,* 17 F.3d 1104, 1108 (8th Cir.) ("'[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes'") (quoting *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)), *cert. denied*, [513] U.S. [946], 115 S.Ct. 355, 130 L.Ed.2d 310 (1994), the Supreme Court has established an alternative method of proof by which an inference of intentional discrimination can be raised. This inferential method of proof, which involves an elaborate set of shifting burdens of production, was originally set forth in *McDonnell Douglas* and then refined in [*Texas Dept. of Community Affairs v.*] *Burdine*[, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)].

We will more thoroughly examine the evidence proffered by Jackson in support of his claim of discrimination in the latter stages of this opinion. However, suffice it to say that the evidence submitted by Jackson here does not fall into the framework of those "rare" cases which demonstrate explicit, inculpatory evidence of discriminatory intent and the district court did not err in finding that Jackson failed to submit evidence of direct discrimination as a matter of law.

Jackson next argues that he supplied evidence which, at a minimum, created a factual issue as to whether Douglas County discriminated against him utilizing the *McDonnell Douglas Corp.* framework. That argument requires us to first outline the *McDonnell Douglas Corp.* burden shifting framework and then apply the evidence submitted by Jackson to determine whether the district court erred in granting summary judgment to Douglas County.

Returning our attention to *Hartley*, the Nebraska Supreme Court held:

The *McDonnell Douglas Corp.* framework is a procedural device of order of proof and production developed at a time when discrimination cases were tried to judges. It is designed to force an employer to reveal information that is available only to the employer, i.e., any unstated reasons for taking the alleged discriminatory action, as well as any discretionary factors underlying its decision. At all times in an unlawful discrimination case, the ultimate burden of persuasion by a greater weight of the evidence remains with the plaintiff. A greater weight of the evidence is the equivalent of a preponderance of the evidence.

Under *McDonnell Douglas Corp.,* first the plaintiff has the burden of proving a prima facie case of discrimination. A prima facie case of discrimination in a failure-to-promote claim consists of demonstrating (1) the employee is a member of a protected group, (2) the employee was qualified and applied for a promotion to an available position, (3) the employee was rejected, and (4) a similarly situated employee, not part of the protected group, was promoted instead. A plaintiff need not prove his or her *relative* qualifications to meet the prima facie burden.

The plaintiff's prima facie case eliminates the most likely legitimate explanations for the employer's adverse action, such as lack of qualifications and the absence of a job opening. "Once that has been done, an inference arises that an employer subjected a

protected class member to an adverse employment action more likely than not because of the consideration of impermissible factors."

Once the plaintiff has established a prima facie case of discrimination, the burden of production shifts to the employer to rebut the prima facie case by producing "clear and reasonably specific" admissible evidence that would support a finding that unlawful discrimination was not the cause of the employment action. When the employer articulates a legitimate, nondiscriminatory reason for the decision, raising a genuine issue of fact as to whether it discriminated against the employee, the employer's burden of production created by the employee's prima facie case is satisfied and drops from the case.

After the employer has presented a sufficient, neutral explanation for its decision, the question is whether there is sufficient evidence from which a jury could conclude that the employer made its decision based on the employee's protected characteristic, despite the employer's proffered explanation. At this stage, the employee "must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'"

On the issue of whether the employer's explanation is pre-textual, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom, even though "the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production." It is permissible for the trier of fact to infer the ultimate fact of unlawful discrimination from the same evidence that would allow the trier of fact to disbelieve the defendant's stated legitimate, nondiscriminatory reason for its decision.

Of course, rejection of the employer's asserted reasons for its actions does not, standing alone, mandate judgment for the plaintiff as a matter of law, because it does not necessarily establish that the real reason was unlawful discrimination. But proof that the defendant's explanation is unworthy of credence can be "quite persuasive" evidence of intentional discrimination. The trier of fact can infer that "the employer is dissembling to cover up a discriminatory purpose." And "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation."

294 Neb. at 892-95, 885 N.W.2d at 693-95.

At this point, it becomes important to analyze where this case fits within the above-stated framework. The district court's order granting summary judgment to Douglas County was a product of Douglas County's motion for summary judgment stating that there was no legitimate issue of material fact here and that Douglas County was entitled to judgment as a matter of law. In connection with that motion and following a hearing in which evidence was submitted by both Jackson and Douglas County, the court made rulings governing all three parts of the *McDonnell Douglas Corp.* framework.

## 1. PRIMA FACIE CASE

First, the court held that during the hearing, Jackson provided sufficient evidence to establish a prima facie case of discrimination. Specifically, the court found that: "Jackson has made a prima facie case of discrimination under the NFEPA: that he is a member of a protected group, was qualified and applied for a promotion to the Subject Position, was rejected, and a similarly situated employee not part of the protected group -- Kernan -- was promoted instead." Douglas County does not cross-appeal this finding so we need not address it further.

## 2. LEGITIMATE NONDISCRIMINATORY REASON FOR ADVERSE EMPLOYMENT ACTION

Because Jackson met his initial burden under the first step of the *McDonnell Douglas Corp.* framework, the burden of production then shifted to Douglas County to provide a legitimate, nondiscriminatory reason for the adverse employee action. The district court found that Douglas County satisfied that burden. Specifically, the court found that there was sufficient evidence proffered by Douglas County that the legitimate nondiscriminatory reason for its employment decision was that Kernan was more qualified for the subject position. The court held that this evidence rebuts the presumption raised by Jackson's prima facie case. Jackson does not dispute that Douglas County produced evidence of a nondiscriminatory reason; he simply contests that the stated reason was pretextual and that he was, at a minimum, entitled to a trial on the issue of whether the stated reason was pretextual for the true discriminatory reason of Douglas County in refusing to promote Jackson. We discuss this in detail below.

## 3. PRETEXT

Once Douglas County established a nondiscriminatory reason for its employment decision, the burden shifted back to Jackson to prove that Douglas County's reason for its action was pretextual. "[A] 'pretext' is found when the court disbelieves the reason given by an employer, allowing an inference that the employer is trying to conceal an impermissible reason for its action." *O'Brien v. Bellevue Public Schools*, 289 Neb. 637, 656, 856 N.W.2d 731, 744 (2014). "The employee may demonstrate pretext either by showing that the employer's explanation is unworthy of credence, because it has no basis in fact, or by persuading the court that a prohibited reason more likely motivated the employer." *Hartley v. Metropolitan Util. Dist.*, 294 Neb. 870, 897, 885 N.W.2d 675, 696 (2016). "The specific evidence presented to demonstrate discriminatory animus may vary, and its sufficiency will be considered as a whole." *Id*. Additionally, the Nebraska Supreme Court has stated that a plaintiff may demonstrate pretext by showing that

> (1) the employer's proffered reasons had no basis in fact, (2) the employer's proffered reasons were against the employer's policy or practice or involved other procedural irregularities, (3) the employer's proffered reasons have changed substantially over time or are inconsistent, (4) the plaintiff was the better qualified applicant, (5) the plaintiff had a laudable prior work history, (6) there was a sharp decline in the plaintiff's performance evaluations near the time of the employer's contested action, (7) the decisionmaker "'overplayed'" the chosen applicant's strengths, (8) the decisionmaker made statements expressing a discriminatory attitude, (9) statistical analysis demonstrating a pattern and practice of discrimination, (10) comparative evidence that similarly situated persons in a

nonprotected class were treated more favorably, and (11) prior instances of disparate treatment of the plaintiff by the defendant in other contexts.

*Id.* at 897-98, 885 N.W.2d at 696-97. For the purposes of this opinion, we will refer to these categories of evidence as the "*Hartley* categories."

Because the instant case was decided on summary judgment, we give Jackson all favorable inferences from the evidence, and we must determine whether Jackson presented evidence to create a genuine issue of fact for the factfinder. See *O'Brien v. Bellevue Public Schools, supra*. Stated differently, Jackson's evidence, when viewed in the light most favorable to him as the nonmoving party, needed to create an inference in reasonable minds that Douglas County had discriminatory reasons in not promoting him and that Douglas County's explanation for promoting Kernan was merely pretext. Jackson's assignment of error, restated, is that the evidence he offered was sufficient to create a triable issue of fact and that the district court erred in granting summary judgment.

The district court found that the evidence submitted by Jackson fell into certain *Hartley* categories. The district court then examined the evidence submitted pertaining to each such *Hartley* category to determine whether any of the evidence submitted by Jackson created a material issue of fact. Because we agree with the district court's organizational approach in analyzing the evidence, we will review each *Hartley* category for which Jackson assigned argument in his brief.

(a) Whether Douglas County's Proffered Reason Had Basis in Fact

Douglas County's proffered reason for hiring Kernan over Jackson was that Kernan was more qualified. "Where the employer contends that the selected candidate was more qualified for the position than the plaintiff, a comparative analysis of the qualifications is relevant to determine whether there is reason to disbelieve the employer's proffered reason for its employment decision." *Hartley v. Metropolitan Util. Dist.*, 294 Neb. at 898, 885 N.W.2d at 697. Further, to support a finding of pretext, Jackson must show that Douglas County hired a less qualified candidate. See, *Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011); *Kincaid v. City of Omaha*, 378 F.3d 799, 805 (8th Cir. 2004) ("to support a finding of pretext, [the applicant] must show that the City hired a *less* qualified applicant") (emphasis in original).

After reviewing the evidence governing the qualifications of Kernan and Jackson including, but not limited to, their backgrounds, experience, and testing scores, the district court found that, when viewed in the light most favorable to Jackson, Jackson failed to establish pretext under this factor. We agree. After reviewing the evidence submitted governing the qualifications of these two candidates, we hold that reasonable minds could not find that Jackson was more qualified for the position than Kernan, nor does Jackson raise this specific argument in his brief on appeal. Accordingly, as to this specific *Hartley* category of pretextual evidence, Jackson's argument fails.

(b) Whether Douglas County's Proffered Reasons Were Against
Policy or Practice or Involved Procedural Irregularities

The *Hartley* category of whether Douglas County's proffered reasons for failing to promote Jackson were against policy or practice or involved procedural irregularities is the thrust of

Jackson's argument. He argues the hiring process utilized by Douglas County supports an inference of discrimination in three ways: (i) the way in which the position was announced and the fact that the position was posted nationally, (ii) the subjective manner in which Dr. Pour and Kelso conducted interview questionnaires, and (iii) the manner in which Douglas County scheduled Jackson and Kernan's interviews. We will examine these arguments independently.

*(i) Announcement and Posting*

Jackson testified that he learned the subject position was available from the outgoing division chief who advised him and another supervisor during an October 2015 meeting that there would be a national search for the division chief's replacement. Although Jackson testified he did not initially deem the announcement discriminatory, he later came to believe the decision to have a national search was discriminatory and that the announcement to him in this meeting was peculiar in that announcements of that nature would normally be made by Dr. Pour to the management team of which Jackson was a member.

Again, viewing the evidence in the light most favorable to Jackson, the district court held that the manner of the announcement and posting the position nationally did not raise an inference of discrimination. The court found that the announcement to Jackson from the outgoing division chief rather than Dr. Pour did not raise an inference of discrimination, nor did the national posting of this position raise such an inference. We agree.

Kelso testified in his deposition:

We usually do [post positions externally]. We post internally in situations where there are a sufficient number of candidates who we believe meet the qualifications.

But at the upper level positions -- senior management and division chief is right there at the top -- we generally post externally. So internals can apply, and externals can apply, so we can get the best candidate for the position.

Further, during Jackson's deposition, he testified that it was the practice of DCHD to post upper-level positions, such as division chief, nationally in order to ensure the best possible candidates. When confronted with the question of whether it was unusual to post nationally for promotions, the following colloquy ensued between the counsel for Douglas County and Jackson:

Q. Okay. Do you recall if those -- these promotions were internally posted or externally posted?

**A. I can't recall specifics, but we've done both. And in our division, which Mary Balluff controlled, we seldom did internal postings. But at the health department, other sections and divisions did.**

(Emphasis in original.) And again when addressing the issue of posting nationally for the position of division chief, the following colloquy ensued:

Q. Okay. When we had talked about the external or opening up the chief position nationally, you had -- you told us about how that decision was announced, I guess, to you.

Do you feel that the decision to open up the hiring for the chief position was racially motivated?

**A. I don't know how to respond to that. Yes.**

Q. Why?

**A. I just do based on my history of how the normal process is.**

Q. Would part of that normal process be only having the position open internally, to your knowledge?

**A. No.**

Q. So what about this one being external was, I guess, racially motivated to your thinking?

**A. Because I was an internal African-American male candidate qualified.**

(Emphasis in original.)

In his brief, Jackson argues that his responses should create a factual question governing the irregularity of Douglas County's process in opening up the job to a national search for candidates. We disagree. Kelso clearly stated that it was Douglas County's general practice to post nationally for the position of division chief. Jackson agreed that posting nationally was normal within his division and that it would be abnormal to simply post the division chief subject position internally. Nor do we find that the manner in which Jackson was notified of the position creates any inference of discrimination. The district court did not err in finding that the evidence of Douglas County posting the subject job for national applicants and communicating the opening through Jackson's outgoing division chief did not raise an inference of discrimination.

### (ii) Interview Questions

Jackson next takes issue with the questionnaires developed for the candidate interviews and the manner of grading of responses to the interview questions. Jackson argues the fact that the questions were not submitted to human resources and the subjective nature of grading should raise an inference of a discriminatory hiring practice. In response, the district court held that the questions were submitted to human resources for review and approval; only the grading scale was not. The court found that there was nothing submitted into evidence which suggested that the grading scale needed approval from human resources. Further, the court determined that Jackson failed to establish that the use of the interview questions, the grading process utilized here, or the failure to submit the grading scale to human resources suggested an inference of discrimination. We agree.

As the Eighth Circuit Court of Appeals stated in *Torgerson v. City of Rochester*, 643 F.3d 1031, 1049-50 (8th Cir. 2011):

Employers are entitled to compare applicants' performance during interviews. *Tyler v. Univ. of Ark. Bd. of Trs.,* 628 F.3d 980, 989 (8th Cir. 2011). Where the employer does not rely exclusively on subjective criteria, but also on objective criteria and education, the use of subjective considerations does not give rise to an inference of discrimination. *Wingate*[ *v. Gage County Sch. Dist.*]*,* 528 F.3d [1074,] 1080 [8th Cir. 2008]. If employees are evaluated on an objective performance scale by a uniformly applied process, the subjectivity of some components cannot in and of itself prove pretext or discriminatory intent. *Elliott v. Montgomery Ward & Co.,* 967 F.2d 1258, 1262-63 (8th Cir. 1992).

Jackson does not point to a single question, answer, or grading scale component within his brief which he suggests violates the above stated rule, and in our review of the record, we can find none. Viewing the evidence in a light most favorable to Jackson, we find no support in his contentions involving the questionnaire or grading scale used by Douglas County in assessing the candidates for the subject position.

### (iii) Scheduling of Interviews

Jackson argues the fact that Kernan was invited to a second interview before he had completed his first interview suggests discrimination. However, Kernan's act in submitting her application on October 17, 2015; her first interview which was conducted on November 5; and Dr. Pour and Kelso's decision to invite Kernan back for a second interview all occurred prior to November 11 when Jackson first submitted his application. In fact, Douglas County then interviewed Jackson before conducting the second interview with Kernan on November 24.

As to these undisputed facts, the district court held "there is nothing to indicate that by scheduling the interviews in such a way, Douglas County was acting out of step with established protocol, practice or procedure." We agree. The record governing the timing of the interviews demonstrates the timing was dictated by Jackson's late decision to apply for the position in relation to Kernan's application and does not support an inference of pretext.

### (c) Whether Douglas County's Proffered Reasons Changed Over Time

In his brief, in connection with the *Hartley* category of whether Douglas County's proffered reasons changed over time, Jackson argues that Douglas County

> would like for judicial outsiders to believe that it is the policy of the Appellant [sic] to always do an external post outside the organization for the positon of Division Chief. In fact, the District Court relies on this information in supporting a finding of no pretext but clearly this is not the case [as] Mr. Kelso is in his position, Division Chief of Administration and Finance due [to] an internal audit and not an external posting -- inconsistency. The inconsistences warrant trial on the issues.

Brief for appellant at 22 (citations omitted). To the contrary, as we noted previously in this opinion, Douglas County established that it was the norm to post the position of Chief in order to obtain the best candidates, a general standard to which Jackson attested, and more specifically, Jackson attested this was the practice with respect to his division. We hold that the evidence submitted by Jackson governing the national posting of the division chief position does not establish an inference that Douglas County's proffered reasons changed over time or were inconsistent and note this category speaks more to the basis articulated by Douglas County as to why it failed to promote Jackson and its consistency with that stated reason over time. The district court thoroughly examined this factor in its order which findings Jackson does not specifically contest in his brief. We agree with the district court's finding that the evidence submitted by Jackson as to this Hartley category created no inference of discrimination.

### (d) Decision Maker Overplayed Chosen Applicant's Strengths

Jackson's final argument which specifically addresses the *Hartley* categories is that there was sufficient evidence submitted to create a factual question governing whether Douglas County overplayed the chosen applicant's strengths. In support of this contention, Jackson argues that he submitted evidence revealing Douglas County did not call the chosen applicant's references; that there was a written note on the chosen applicant's questionnaire, after the first question, the "AP told her"; that there was evidence the chosen applicant was not scored on her second interview; and that Jackson testified that his own qualifications were downplayed. Jackson argues that this evidence was "sufficient to create a genuine issue of material fact as it relates to this factor." Brief for appellant at 23.

We first note that, in its order, the district court stated that, as to this factor:

Jackson does not identify which of Kernan's strengths he believes Douglas County overplayed. Douglas County argues that Kernan was chosen for having more overall experience in what are listed as "essential functions" for the Subject Position: public health experience, securing and managing grant funding, and supervisory experience. As the Court noted previously, Kernan's strengths in these areas are supported by the evidence, and Jackson has not introduced evidence to the contrary.

We agree with the district court. It is unclear whether Jackson introduced his arguments stated above to the district court. Regardless, we likewise find that there was no evidence submitted by Jackson which would support an inference that Douglas County "overplayed" the chosen applicant's strengths. Accordingly, the district court did not err in respect to its finding governing this specific *Hartley* category.

### (e) Other *Hartley* Categories

The district court also reviewed evidence governing other *Hartley* categories. Those reviewed were: Jackson's laudable work history; whether there was a decline in Jackson's performance evaluations; whether Douglas County made statements expressing a discriminatory attitude; and whether there was statistical analysis demonstrating a pattern or practice of discrimination. The district court found in its well-articulated order that Jackson failed to produce evidence within any of those *Hartley* categories in which a reasonable factfinder could infer discrimination. Jackson does not separately argue those findings in his brief so we do not further discuss those findings here. Suffice it to say, we concur with the district court that as to each *Hartley* category, Jackson failed to submit evidence which would support an inference of discrimination in reasonable minds.

Instead, we will focus on the more general arguments made by Jackson that the affidavits of Mohammad and Lausterer were sufficient to create triable issues of fact. Both individuals were former employees of DCHD and both recited concerns in connection with their former employment. Specifically, Mohammad's affidavit focuses on her failure to be promoted to Lead Program Supervisor and how she believed it was improper that she was asked to repost for the position after she had already submitted her application. She then went on to discuss her concerns and complaints concerning Kelso and how she had filed an EEOC claim following the termination of her employment. Lausterer likewise served as an employee with DCHD and spoke of lateral job

movement within the department without promotion and that she eventually left DCHD because she felt "there were no advancement opportunities from the position I was in." Lausterer was also critical of Kelso as she described "would rub many employees the wrong way."

After carefully reviewing these affidavits, taken together with all of the evidence submitted by Jackson, we find that the district court did not err in granting summary judgment in favor of Douglas County. Although these individuals point to concerns they had in connection with their own employment, there is nothing contained in their affidavits which identify specific acts of discrimination in connection with the positions they held or may have sought. More specifically, the affidavits failed to articulate factors which would separately support a prima facie case of discrimination governing Douglas County's actions in connection with either of those individuals and the positions for which they aspired. Jackson appears to offer these testimonials to show that, if these individuals were dissatisfied with DCHS' decisions governing positions they sought within the department, there must be discrimination in connection with Douglas County's collective decisions and the court should infer a culture of discrimination. After carefully reviewing these affidavits and all of the evidence submitted, we disagree. Jackson has simply failed to submit any evidence here upon which a reasonable mind could infer that Douglas County's stated position -- that they hired Kernan because she was more qualified -- was pretext for discrimination.

## VI. CONCLUSION

For the reasons explained above, Jackson failed to present evidence of a genuine issue of material fact that the articulated permissible reason for Jackson not being promoted to a managerial position within DCHD was a pretext for discrimination; therefore, Douglas County was entitled to judgment as a matter of law and the district court properly granted summary judgment in favor of Douglas County.

AFFIRMED.